28816. HOWELL *et al.* v. JACKSON.

DECIDED JULY 3, 1941. REHEARING DENIED JULY 23, 1941.

*Bryan, Middlebrooks & Carter, Yantis C. Mitchell,* for plaintiffs in error.

*Dorsey, Stubbs & Dorsey,* contra.

MACINTYRE, J. Janet Lee Jackson, age five, by Mrs. E. T. Jackson, her mother as next friend, brought this action against Dr. J. L. Howell and Dr. J. T. Hutchins, for personal injury alleged to have been caused by the negligent and incorrect setting of plaintiff's arm, leaving the arm weak, disfigured, at an awkward angle, and subjecting her to intense pain and suffering. As a result of the improper setting, the plaintiff, realizing the condition of the arm and probable permanent disfigurement and loss of use

thereof, through other physicians attempted to have the defects and disfigurements corrected by resetting and an operation necessitating the plaintiff to be put under a general anesthetic on four separate occasions after the arm had been originally set. The jury returned a verdict in favor of the plaintiff and the defendants excepted to the overruling of their motion for new trial.

█ Dr. T. M. McIntosh, now deceased, of Thomasville, Georgia, whose medical education had been obtained in part at the University of Heidelberg in Germany, then one of the greatest institutions of its kind in the world, and who became one of the most celebrated general practitioners as well as surgeons in southwest Georgia, once made a statement in the presence of the writer which has ever lingered with him. He said: "We doctors can not raise the dead. All we can do is to assist nature in her effort to heal the ailment." A physician can not always effect a cure. He is "only required to possess and exercise the degree of skill and learning ordinarily possessed and exercised under similar circumstances by the members of his profession in good standing, and to use ordinary and reasonable care and diligence, and his best judgment, in the application of his skill to the case." *Lake* v. *Baccus,* 59 *Ga. App.* 656, 657 (2 S. E. 2d, 121). Jurors and courts do not know and are not permitted arbitrarily to say what are the proper methods of treating an ailment. This is a medical question. Hence, the general rule is that medical testimony must be introduced to inform the jurors what is a proper method of treating the particular case. "The court and the jury must have a *standard* measure which they are to use in measuring the acts of the doctor in determining whether he exercised a reasonable degree of care and skill. They are not permitted to set up and use any arbitrary or artificial standard of measurement that a jury may wish to apply." *Pilgrim* v. *Landham,* 63 *Ga. App.* 451 (4) (11 S. E. 2d, 420). If a doctor or physician possesses the qualifications above stated, and uses ordinary and reasonable care and diligence and his best judgment in the application of his skill to the case, he is not liable because his efforts to assist nature in effecting a cure did not bring about the desired result. "A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had." Code, § 84-924.

Taking the evidence in its most favorable light to upholding the verdict in favor of the plaintiff, the jury were authorized to find that Janet Lee Jackson had her arm broken and was taken by her mother to Dr. Howell's office in the Medical Arts Building in Atlanta, Georgia. While waiting for Dr. Howell to come a nurse took an x-ray of the arm, which was of course before the arm was set. Dr. Howell took the girl and her mother to the Lakewood clinic from the Medical Arts Building, and there Dr. Howell gave the anesthetic and Dr. Hutchins, his partner, set the arm. Three weeks after the setting of the arm Mrs. Jackson complained to Dr. Howell about the look of the arm, but no x-rays were taken then, but at the end of five weeks after the setting of the arm, she demanded an x-ray picture of it and Dr. Howell took her back to the Lakewood clinic and made the x-ray. There were only two x-rays taken by the defendants, according to the testimony of the child's mother, one just before the setting, the other five weeks thereafter. The child's arm was broken in or near the elbow, and with reference thereto Dr. M. T. Myers, an expert witness for the plaintiff, testified: "It is necessary to watch this type of fracture very carefully because it involves the joint. . . As to making x-rays after the setting of the arm, it is the only way you can keep track of the fragments after reduction. X-rays should be made as soon as you have reduced it, and you think you have reduced it, putting on the plaster, or after putting on the plaster and it sets. You can take an x-ray with the casts on quite satisfactorily if it is handled by one knowing the proper technique of x-ray. As to how frequently this should be done after setting, I think you should check on them every few days."

The jury were authorized to find that the failure of the doctors to follow the progress, or lack of proper progress, in the healing of the broken arm, by the use of x-ray for over five weeks was negligence on their part, and that their conduct subsequently to the setting of the broken arm, in failing to inform themselves by the use of the x-ray, which was an available and well-known instrumentality which would have shown in time to correct it that one of the three things which the expert doctor witness said brought about the misangulation of the arm, to wit, an improper setting, or slip after a proper setting, or, if properly set, a knitting of the break so irregularly as to cause a misangulation, any one of which if not cor-

rected before the healing of the break was complete would result in the deformity, was not a mere error of judgment, but was negligence in not obtaining the available proper data on which to base their judgment as to the proper treatment, and that the failure to employ the x-ray, an available and well-known means for obtaining such data, was a lack of ordinary care and diligence on the part of the doctors. *Chapman* v. *Radcliffe,* 44 *Ga. App.* 649 (162 S. E. 651) ; James v. Grigsby, 114 Kan. 627 (220 Pac. 267, 269) ; Trask v. Dunnigan (Mo. App.), 299 S. W. 116; Hoover v. McCormick, 197 Ky. 509 (247 S. W. 718) ; 48 C. J. 1128 (85, 86). The jury would have been authorized, under the conflicting evidence, to find either for the plaintiff or for the defendant. But, under the rule of law that we must take the evidence in its most favorable light to upholding the verdict, which was in favor of the plaintiff, we can not say that the finding in favor of the plaintiff was contrary to the evidence or that reversible error was committed.

The judge charged the jury: "It is charged in this case, gentlemen, that these defendants were partners in this treatment of this plaintiff. I charge you, gentlemen, if you believe that these defendants in this case were partners, then each is liable for the negligence of the other in carrying on the partnership business; and if you find they are partners, and if you find either of them is liable, then both would be liable." The defendants contend that this excerpt from the charge was erroneous for the reason that there was no allegation in the petition that the defendants were partners; that the petition was brought against the defendants as individuals, and was not brought against a partnership or against the defendants individually as partners; that it was prejudicial to both defendants for the court to charge the jury that if one defendant was liable each would be liable for the negligence of the other.

There may be a particular partnership (one relating to a single individual transaction or enterprise) or a general partnership. Black's Law Dictionary. Under certain aspects of the evidence, to wit, that which related to the defendants' association and relationship in their practice of the medical profession and their participation in the treatment, the jury were authorized to find that the partnership referred to was incidental to and one of the means by which the treatment was given. The charge excepted to was in effect saying that if the defendants were partners in the particular

matter (business) in which they were engaged to set and treat the broken arm, and by reason of this association and relationship each of the partners participated in the treatment, each of them was the agent of the other in the matter (business) of setting and treating the arm, and thus each would be liable for the negligent acts of the other done in pursuance of the particular partnership business, to wit, the treating of the arm. The petition alleged "that the defendants herein are Dr. J. L. Howell [stating the place of his residence] and Dr. J. T. Hutchins [stating the place of his residence]" and "that the defendant Dr. J. T. Hutchins is associated with the defendant Dr. Howell at the Lakewood Heights Clinic." The answer stated that the defendants operated Lakewood Heights Clinic, and that each was present at and participated in the setting of the broken arm and the subsequent treating of the ailment. The testimony of one of the defendants was that they were partners. The judgment was not against the partnership, but against the defendants. *Rogers* v. *Carmichael*, 184 *Ga.* 496 (192 S. E. 39). This ground is not meritorious. The judge did not err in overruling the motion for new trial.

*Judgment affirmed.* *Broyles, C. J., and Gardner, J., concur.*