36190. PHILLIPS, Administratrix *v.* SHEA.

DECIDED NOVEMBER 29, 1956—REHEARING DENIED DECEMBER 12, 1956.

804

812

816

*Northcutt & Edwards, Edwin R. Johnston, W. S. Northcutt,*
*R. J. Edwards,* for plaintiff in error.

*James A. Branch, Thomas B. Branch, Jr.,* contra.

QUILLIAN, J. In order to conveniently designate the parties referred to in this opinion, the plaintiff in error, Mrs. Jessie H. Phillips, will be referred to as the plaintiff; the defendant in error, Dr. P. C. Shea, Jr., as the defendant; and Hugh D. Phillips, who originally instituted the action and in whose stead his administratrix was substituted, will be referred to as the patient.

The cause of action alleged in the petition and upon proof of which the plaintiff relies for recovery was that the defendant, a surgeon, proximately caused serious injuries to the patient by his failure to exercise ordinary care in performing two operations, one a diagnostic operation to ascertain the location and extent of an aneurysm in the patient's abdomen and the other an exploratory operation to find a piece of plastic tube or catheter broken off in the patient's arterial system in the course of the first operation. These operations in the ensuing discussion will

be referred to after the order in which they occurred as "the first operation" and "the second operation."

This being an appeal from a judgment of the trial court granting a nonsuit, the only question here is whether the plaintiff proved the case as laid in the petition. *Archer v. Johnson,* 90 *Ga. App.* 418 (83 S. E. 2d 314); *Hardin v. Nicholas,* 90 *Ga. App.* 738 (84 S. E. 2d 110); *Bradford v. City of Commerce,* 91 *Ga. App.* 581 (86 S. E. 2d 645).

The defendant contends the evidence failed to prima facie prove the case as alleged and hence that the trial judge was right in granting the nonsuit. He particularly insists that the plaintiff's proof was insufficient for the reason no expert witness in the field of diagnosis or surgery testified to the direct opinion that he was negligent in performing either of the operations, or that negligence on his part resulted in injury to the patient. In support of this position he cites several authorities, all stating the same rule as to the necessity for expert opinions in matters of diagnosis. Perhaps the best-worded and clearest pronouncement of the rule is found in *Pilgrim v. Landham,* 63 *Ga. App.* 451 (3) (11 S. E. 2d 420), as follows: "What is the proper method of diagnosing a case is a medical question to be testified to by physicians as expert witnesses. Laymen, even jurors and courts, are not permitted to say what is the proper method of diagnosing a case for discovering the nature of the ailment. Results of the diagnosis and treatment, if so pronounced as to become apparent, as where a leg or limb which has been broken is shorter than the other after diagnosis and treatment, may be testified to by anyone. James *v.* Grigsby (Kansas), 200 Pac. 267. And where, measured by the method shown by medical witnesses to be negligence and the evidence, a bad result is shown, it is the province of the jury to say whether the result was caused by the negligence."

The correct construction of the holding quoted, and others of similar import, is not that in every case the plaintiff's recovery is dependent upon the direct testimony or opinion of an expert witness that the examination of the patient was unskillful or the operation performed on his person negligent. The rule stated was intended to apply only in those cases where, on account of the involved character of the disease or the intricate nature of

the processes necessarily employed in ascertaining its existence and progress, an expert witness cannot by his testimony bring within the comprehension of intelligent laymen the facts which must be known and understood in determining whether the diagnosis was prudently made. However, the decision of this case is not controlled by the holding in the *Pilgrim* case, supra, but by the rule stated in *Caldwell* v. *Knight,* 92 *Ga. App.* 747 (89 S. E. 2d 900).

In respect to the first operation the petition does not assert that there was lack of skill or care on the defendant's part either in diagnosing the patient's malady as an aneurysm in his abdomen or in the determination of the operation to be performed in ascertaining the exact location and extent of the aneurysm. The charges or specifications of negligence in relation to that operation pertain exclusively to the manner in which it was executed. The specifications of negligence were as set forth above in the statement of facts.

If the plaintiff's proof was sufficient to present an issue of fact as to whether the defendant, while performing the first operation, was negligent in one of the particulars alleged in the petition and that the negligence caused the plastic tube to break off in the deceased's arteries, the grant of the nonsuit was error. This is true because there was competent evidence in the record authorizing the logical inference that all of the injuries for which recovery was sought flowed from and were proximately caused by the segment of the plastic tube or catheter being severed and set adrift in the patient's arteries. The second operation was admittedly necessitated by the breaking off of the catheter, its only purpose being to discover the location thereof and effect its removal from the patient's arterial system. That this operation was of a grave nature and itself constituted a serious physical injury to the patient is shown by the evidence.

There was also sufficient evidence in the record to authorize a finding that the broken segment of the catheter lodged at the bifurcation of the popliteal artery in the patient's right leg which is just back of the knee cap, occluded the flow of blood causing gangrene to set up in his foot, and thus proximately resulted in his right leg having to be amputated. Dr. Shea testified that the broken tube in the popliteal artery, in the presence

of arteriosclerosis, could "well cause" obstruction of the blood flow to the points distal to the occlusion. There was evidence that arteriosclerosis in an advanced stage was present in the artery. The defendant in his version of the matter admitted that the broken piece of tube, plus blood clots present in the artery, could have caused the occlusion. He advanced the theory that blood clots alone could have had that effect, even in the absence of the catheter, and that the condition could have existed before it was present in the artery. However, there was no evidence of any complaint of pain or any discoloration in the foot before the catheter was severed in the artery. On the other hand, there was undisputed evidence that shortly thereafter, and on the same day, the patient experienced excruciating pain in the foot and that it turned a dark color due to the occlusion of the blood flow to that member. Mr. Phillips's condition in this respect deteriorated until the gangrene set up and the amputation of his leg was necessary.

The evidence adduced upon the trial showed that the defendant was called into consultation by the patient's physician; that it was determined that an aneurysm was present in the patient's arterial system, in his abdomen, and that an operation to definitely learn in just what arteries it existed was decided upon. The operation, according to the defendant's testimony, was a proceeding in which a 15-guage catheter was inserted in the patient's superficial femoral artery and from thence passed along proximally, that is, in the direction of the heart, to the bifurcation of the aorta in the abdomen. An opaque fluid was injected through the tube into the arteries. The size and shape of the arteries involved would be distinctly outlined so that accurate X-ray pictures could be taken and the exact location and extent of the aneurysm accurately ascertained.

The evidence did not support the allegation that the defendant failed to exercise care in examining or testing the plastic tube. His evidence affirmatively showed that he did properly test the tube. The fact that the tube broke off in the artery was not a circumstance indicating the contrary, because the doctor described a condition in the patient's arteries which might well have been expected to cut or break even a perfect tube of the type used.

There was evidence that before the defendant began the first operation he was aware that there existed in the patient's arteries arteriosclerosis; that this disease caused the interior walls of the arteries to harden and particles of the same to flake off; that these particles became what is known as calcium plaque, shell-shaped, hard and sharp, which would obstruct the passage of an object inserted in the arteries and were capable of cutting in two a plastic tube of the kind used. The defendant, with knowledge of these circumstances, inserted the tube in the patient's artery and undertook to pass it along the arteries toward the heart. When he met with resistance in this attempt he partly withdrew the tube or catheter and then pressed it against the obstruction in an attempt to force its passage. This process was repeated several times with the result that the catheter was broken off in the artery.

One of two conclusions is inescapable if the proof submitted by the plaintiff is true: first that, by the exercise of the forethought which is the chief ingredient of care, the defendant should have anticipated that the tube, when pressed against the obstruction that barred its passage with the force that was exerted, must be broken off; or secondly that, if the obstruction was what he might well expect it to be, calcium plaque, the tube would be severed and a part of it would be left in the artery.

Thus the complaint that the defendant was negligent in the manner in which he manipulated the plastic tube in the patient's arteries was supported by evidence and should have been submitted to the jury. At this point in our review of the case it is apparent that it was error to grant the nonsuit and that the case must be reversed.

We have not overlooked the fact that the doctor stated that he very gently pushed the tube against the obstruction. It must be observed that unless the doctor was exerting what he anticipated would be enough pressure to force the passage of the tube past the obstruction, there would have been no purpose in withdrawing and pressing the tube forward. In these circumstances, it was for the jury to decide whether, in the exercise of ordinary care, he should have anticipated that the tube might be broken or cut.

However, while not necessary for the purpose of deciding that

question, since the case is to be tried again, and the question will then arise, it is expedient to pass upon whether the issue as to the alleged negligence of the defendant in performing the second operation was supported by sufficient competent proof to carry it to a jury.

This operation was described by the defendant in a statement made by him. The seriousness and complexity of its nature appeared from the defendant's testimony. The defendant gave evidence that the piece of plastic tube loose in the patient's arterial system could result in a variety of serious consequences, and that its presence there posed considerable danger; but that three months would probably elapse before the mischief could be done. Thus he made it clear that the removal of the tube was necessary, but that in his opinion there was no cause for haste in performing an operation for that purpose.

The evidence showed that the first operation was performed in the X-ray room; that immediately after discovering that he had broken the tube off in the patient's arteries the defendant sent the patient to the operating room and, without summoning another surgeon to assist him, began the second operation. Since the evidence elicited from the defendant indicated that the aneurysm was not so great that he did not have time in which to secure the services of another surgeon, together with the admission by him that he did not employ some method of determining what part of the patient's anatomy should be first explored in search of the piece of tube adrift in the patient's arteries, we think the issue as to whether ordinary care required him to call another surgeon into consultation was a question for the jury. The evidence presents an issue of fact as to this matter.

In our opinion the plaintiff proved her case substantially as laid in the petition, and the grant of the nonsuit was error. The issues presented by the specifications of negligence in reference to the defendant's failure to exhaust the means of diagnosis conveniently available to him, before beginning the exploratory examination, were supported by some evidence and should have been submitted to the jury. The evidence certainly furnished the jury a factual basis upon which they could have made an intelligent finding in reference to the matters involved. From the evidence adduced upon the trial, it could have been legiti-

mately inferred that the means of diagnosis were, as alleged in the petition, presently available to the defendant; that he had sufficient time to employ their use; and that there was a strong probability they would have disclosed the lodgment of the catheter at the point where dissection of the leg after amputation disclosed its presence. Thus by the use of ordinary prudence the necessity of the second operation might have been obviated as well as the loss of the patient's leg.

*Judgment reversed. Gardner, P. J., Townsend, Carlisle and Nichols, JJ., concur. Felton, C. J., dissents.*

FELTON, C. J., dissenting. Whether or not the doctor was negligent in this case is a medical question the answer to which must be established by medical testimony, of which there is none authorizing a finding that the doctor was negligent. In order to make out a case, the plaintiff had to prove that the doctor was negligent in taking the risk of leaving the tube in the artery, assuming that the doctor knew of the danger and possibility of the tube's being cut off and left in the artery and that it could not be later located and removed. What the doctor should or should not have done depended on the condition of the patient and the weighing of the results of not endeavoring to prepare for and make an X-ray and of the chances for successful treatment against making the effort to prepare for and make the X-ray and the chances for adverse results as were had in this case. The mere fact that the jury had evidence from which it could find that the leaving of the tube in the artery contributed to the condition which necessitated the amputation could not take the place of proof that the doctor was negligent in the procedure which he followed. The law in such cases is clearly stated in *Pilgrim v. Landham*, 63 *Ga. App.* 451 (4) (11 S. E. 2d 420). In that case it was only held that the bad result could only be considered if the negligence was shown as measured by the method shown by medical witnesses to be negligence. The court stated: "The proper standard of measurement is to be established by testimony of physicians; for it is a medical question." See also, *Howell v. Jackson*, 65 *Ga. App.* 422, 423 (16 S. E. 2d 45); and *Mayo v. McClung*, 83 *Ga. App.* 548 (64 S. E. 2d 330).