19627. SHEA *v.* PHILLIPS, Administratrix.

CANDLER, Justice. Hugh D. Phillips filed a suit for damages against Dr. P. C. Shea, Jr., alleging malpractice. Before it was tried, Phillips died, and his administratrix was substituted in his stead as the party plaintiff. On the trial, the court granted a nonsuit, and the Court of Appeals, with Chief Judge Felton dissenting, reversed that judgment. *Phillips* v. *Shea,* 94 *Ga. App.* 796 (96 S. E. 2d 390). The allegations of the petition, as four times amended, are fully set out in the opinion filed by that court, and they can be seen by reference thereto. Briefly, they show that on April 22, 1953, the defendant, as a physician and surgeon, performed two operations on the original plaintiff. During the first operation, about 6 inches of a plastic catheter was broken off in one of his arteries. The second operation, which immediately followed the first one, was an unsuccessful effort to locate and remove the portion of the catheter adrift in the patient's arterial system. It is alleged that the original plaintiff was injured and damaged by the defendant in consequence of the following negligent acts:

(1) in manipulating the catheter so roughly while it was in his body that a portion thereof was broken off; (2) in failing to promptly examine the popliteal artery, and particularly the portion thereof near the popliteal bifurcation where the broken-off catheter was likely to be lodged; (3) in failing before inserting the catheter to test it for strength to withstand the force and pressure to which it was subjected by the defendant while in the patient's body; (4) in failing, following the breaking of the catheter, to call to his assistance another surgeon competent to assist in the location of the catheter; (5) in failing to exhaust methods of diagnosis for presence of the broken portion of the catheter at or near the femoral bifurcation which is a narrow point of the arterial system that could be explored with much less danger than the portions of his abdomen that were actually opened and probed; (6) in forcing the catheter into his artery with a degree of force that it had not been tested to withstand; (7) in failing to skillfully discharge the duty he owed his patient in performing the operations; (8) in failing to exercise reasonable care and skill in the performance of the operations; (9) in failing to exercise reasonable care and skill in inserting the catheter into his arterial system; (10) in failing to exercise the degree of skill and learning ordinarily possessed and exercised, under similar circumstances, by the members of his profession; (11) in failing on the two occasions mentioned in the petition to exercise that degree of care and skill required by his profession as a surgeon; and (12) in forcing the catheter against hard and sharp obstructions in his artery.

The Court of Appeals by its majority decision held that the trial judge erred in granting a nonsuit, since the plaintiff's evidence was sufficient to authorize the jury to find that the defendant was negligent: (1) in failing to locate and remove the catheter segment which lodged at the bifurcation of the popliteal artery in the patient's right leg, and which stopped the flow of blood from his knee down to his foot, necessitating the amputation of his leg because of gangrene; (2) in the rough manner in which he manipulated the catheter in the patient's arteries; and (3) in failing to summon another surgeon to assist him before beginning the second operation. To review these rulings, the writ of certiorari was granted. *Held:*

1. If the plaintiff fails to make out a prima facie case, or if, ad-

mitting all the facts proved and all reasonable deductions from them, the plaintiff ought not to recover, a nonsuit may be granted. Code § 110-310; *Hobbs* v. *Houston,* 190 *Ga.* 505 (1) (9 S. E. 2d 749); *Lewis* v. *Bowen,* 208 *Ga.* 671 (68 S. E. 2d 900).

2. In an action brought by a patient against his physician or surgeon for malpractice, the presumption is that the medical or surgical services were performed in an ordinarily skilful manner, and the burden is on the one receiving the services to show a want of due care, skill, and diligence. *Ga. Northern Ry. Co.* v. *Ingram,* 114 *Ga.* 639, 640 (40 S. E. 708); *Akridge* v. *Noble,* 114 *Ga.* 949, 958 (41 S. E. 78); *Fincher* v. *Davis,* 27 *Ga. App.* 494 (2) (108 S. E. 905); 21 R.C.L. 406; Taylor, Med. Jur. 356. And in such a case the proof ordinarily required to overcome such presumption of care, skill, and diligence is that given by physicians or surgeons as expert witnesses. *Pilgrim* v. *Landham,* 63 *Ga. App.* 451 (4) (11 S. E. 2d 420); *Howell* v. *Jackson,* 65 *Ga. App.* 422 (16 S. E. 2d 45); 70 C.J.S. 1006-1008, § 62; 41 Am. Jur. 238, § 128. More than twenty-three hundred years ago Aristotle, in his work on Politics, wrote: "As the physician ought to be judged by the physician, so ought men to be judged by their peers." And for centuries the courts of this and other countries have, almost without exception, held that expert medical evidence is required to establish negligence respecting the service a physician or a surgeon renders his patient. In *Pilgrim's* case, supra, the Court of Appeals quoted with approval from Schumacher *v.* Murray Hospital, 58 Mont. 447 (193 Pac. 397, 403), where it was held: "Of course, in the absence of expert testimony in behalf of the plaintiff in a malpractice case, the court is not justified in submitting the same to the jury. But, when competent expert evidence has been received, it is to be considered by the jury only as other evidence in the case." It is the general rule in this jurisdiction that laymen, even jurors and courts, are not permitted to say what is proper medical and surgical treatment, for that is a medical question. But where the result of medical treatment is so pronounced as to become apparent, as where a leg or limb which has been broken is shorter than the other after such treatment, or where a doctor undertakes to stitch a wound on his patient's cheek, and, by an awkward move, thrusts his needle into the patient's eye,

this fact may be testified to by anyone competent to testify; and cases of such character are the only exception in this jurisdiction to the general rule requiring expert medical testimony to show negligence respecting a physician's or surgeon's service to his patient. See, in this connection, James *v.* Grigsby, 114 Kan. 627 (220 Pac. 267), which was cited with approval in *Pilgrim's* case, supra.

3. On the trial of this case, Dr. Ivan B. Ross, as a witness for the plaintiff, testified by deposition, and Dr. Shea was called by the plaintiff for cross-examination and questioned at great length. No other medical evidence was introduced, except certain reports which were filed as a part of the patient's hospital record by Dr. Ross, Dr. Shea, and others. We have carefully examined all of the evidence; and, after doing so, are fully convinced that it shows no fact or circumstance from which the jury could have found or inferred that Dr. Shea was negligent in either one of the two respects first mentioned by the Court of Appeals in its decision. It clearly shows that Dr. Shea, in performing the two operations, exercised that degree of care, skill, and diligence which any competent surgeon would be required to employ in doing, as here, intricate and dangerous operations.

4. We think the Court of Appeals erroneously held that the jury would have been authorized to find or infer from the evidence that Dr. Shea was negligent in failing to summon another surgeon to assist him before beginning the second operation on Mr. Phillips. Dr. Shea testified that the piece of plastic tube adrift in the patient's arterial system could result in a variety of serious consequences, and that its presence there posed considerable danger. As to an immediate necessity for the second operation, the evidence shows that Dr. Shea exercised his professional judgment in determining that question, and this court will not hold that a jury is authorized to find that a competent surgeon is negligent in performing an operation until he calls some other surgeon to assist him.

5. For the reasons stated in the preceding divisions, the judgment rendered by the Court of Appeals is erroneous.

*Judgment reversed. All the Justices concur, except Wyatt, P. J., Head and Mobley, JJ., who dissent.*

ARGUED MARCH 11, 1957—DECIDED APRIL 8, 1957—REHEARING DENIED APRIL 24 AND MAY 16, 1957.

*James A. Branch, Thomas B. Branch, Jr.,* for plaintiff in error.

*Cumming, Nixon & Eve, Anderson, Anderson, Walker & Reichert, Eberhardt, Franklin, Barham & Coleman, John A. Dunaway, Dunaway & Embry, Nightingale & Liles, B. N. Nightingale, Alexander, Vann & Lilly,* for party at interest not party to record.

*Northcutt & Edwards, Edwin R. Johnston, R. J. Edwards, W. S. Northcutt,* contra.

MOBLEY, Justice, dissenting. I dissent from division 3 of the majority opinion and from the judgment reversing the Court of Appeals. The court's opinion in division 3, while not denominating what acts of negligence are referred to, obviously deals with the plaintiff's allegations of negligence "(1) in manipulating the catheter so roughly while it was in his body that a portion thereof was broken off," and "(12) in forcing the catheter against hard and sharp obstructions in his artery." In my opinion, there was sufficient evidence to withstand a motion for a nonsuit and to take the case to the jury on these two alleged acts of negligence.

These allegations refer to the manner of using the catheter. They present neither a question of correctness of diagnosis nor of choice of remedy, method of care or of treatment of a patient. Accordingly, they do not fall within the general rule stated in division 2, that laymen, even jurors and courts, are not permitted to say what is proper medical and surgical treatment. But these allegations come under the exceptions therein referred to; and the testimony of Dr. Shea as to what he did, and of Dr. Ross as to the condition of that part of the catheter left in the patient's artery, would authorize the jury to infer that the defendant was negligent as alleged in the allegations of negligence quoted above.

I am authorized to say that Justice Head concurs in this dissent.