41300.   ANDREWS v. SMITH.

ARGUED MAY 3, 1965—DECIDED JULY 14, 1965—
REHEARING DENIED JULY 27, 1965.

*N. Forrest Montet,* for plaintiff in error.

*Troutman, Sams, Schroder & Lockerman, William H. Schroder, T. M. Smith, Jr.,* contra.

JORDAN, Judge. ■ It is first contended by the plaintiff that the order of the trial court denying the defendant's motion for nonsuit constituted the law of the case that the plaintiff had presented sufficient evidence to authorize a recovery in her behalf. This contention is without merit. "When a court passes upon a motion for nonsuit it decides only one question, that is, do the allegations and the proof correspond? In sustaining such a motion the court does not hold that the plaintiff is not entitled, under the law, to recover on the facts alleged;

neither does the overruling of the motion decide that the plaintiff is entitled under the law to recover." *Kelly v. Strouse,* 116 Ga. 872 (4d), 883 (43 SE 280).

■ It was incumbent upon the plaintiff in order to present an issue for the jury's determination as to the defendant's alleged negligence to produce medical evidence from which the jury could find the want of due care, skill or diligence on the part of the defendant. *Hollis v. St. Joseph Infirmary,* 108 Ga. App. 309 (132 SE2d 841). This is true for the reason that in an action against a physician or surgeon for malpractice, the presumption is that the medical or surgical services were performed in an ordinarily skillful manner, and the burden is on the plaintiff to show a want of due care, skill or diligence. *Shea v. Phillips,* 213 Ga. 269, 271 (98 SE2d 552). "The proper standard of measurement for a jury to apply to the acts of a doctor to determine whether he exercised a reasonable degree of care and skill must be established by testimony of physicians, for it is a medical question." *Hayes v. Brown,* 108 Ga. App. 360 (1b) (133 SE2d 102).

It is not necessary, however, that another physician testify that "the defendant was guilty of malpractice" (*Wilson v. Kornegay,* 108 Ga. App. 318, 321 (132 SE2d 791)), it being sufficient if the court and jury are given a standard of measurement by which they may judge the acts of the defendant to determine whether or not he exercised a reasonable degree of care and skill, such standard of measurement being established by testimony of physicians. *Pilgrim v. Landham,* 63 Ga. App. 451 (11 SE2d 420); *Howell v. Jackson,* 65 Ga. App. 422 (16 SE2d 45). When competent expert medical evidence has been received, it is to be considered by the jury only as other evidence in the case. *Pilgrim v. Landham,* supra, p. 454; *Word v. Henderson,* 220 Ga. 846 (142 SE2d 244).

■ It is our opinion that the testimony of the plaintiff's medical witness was sufficient to establish a proper standard of measurement by which the jury could determine the issue of the defendant's alleged negligence in "failing to discover the calcium deposits in plaintiff's right shoulder and removing same," and that under the evidence adduced in behalf of the plaintiff,

when so measured, a jury question was presented as to the issue of the defendant's negligence and whether it proximately caused or contributed to the plaintiff's subsequent condition.

Dr. Martin T. Myers, the doctor who performed the second operation on the plaintiff, testified that the x-rays made at his request on March 12, 1960 (after the operation performed by the defendant and before the operation performed by Dr. Myers), as well as the x-rays made by the defendant on February 23, 1960, disclosed the existence of a calcium deposit of a very hard composition in the plaintiff's right shoulder; and that upon operating he located and removed this deposit which he described as a "thickening of the bursa tissue, measuring about a half an inch long, about an eighth of an inch thick, rather cylindrical in shape," and being "practically the same density of bone, rather hard." Dr. Myers further testified that this calcified bursa was "very palpable, it could be seen with the naked eye"; that, while the incision made in the first operation appeared to be below the area in which the calcium deposit was located, by retraction, the bursa could have been observed during the first surgical procedure; and that the deposit located and removed by him would take many months to form, and in his opinion such deposit existed prior to February 27, 1960, the date of the first operation.

Dr. Myers also testified that a surgical procedure of this type was a "simple surgical approach to an underlying growth, which is very easily pressed and could be seen with the naked eye, and there was no difficulty in seeing it." In answer to the following question, "Do you know of any reason why an orthopedic surgeon in exercising ordinary care in performing this type of operative procedure on February 27, 1960, could fail to discover such a deposit as you said you found to exist?" Dr. Myers answered: "If he didn't have the proper landmarks on the bone, he might have missed it that way, overshot the site." The following question was then asked Dr. Myers: "Now, assuming an orthopedic surgeon practicing in Atlanta, Georgia, operates to remove calcified bursa from a shoulder which is previously observed on x-ray prior to the operation and does not find the calcified bursa after opening up the shoulder area, what if any-

thing in your opinion should be done in good medical and surgical practice as regards x-rays of the shoulder prior to closing the incision, assuming that there are x-ray facilities available in the operating room?" (The evidence showed that such facilities were available when the first operation was performed.) Dr. Myers answered: "Only thing to do would be to take it under x-ray outlined by a marker, just where you think the bursa is, if after exploring and having continued in exploring it couldn't be found, then the x-ray would be the last resort."

The following examination of Dr. Myers then transpired: "Q. 'What would be the purpose of x-ray?' A. 'To readjust your sites.' Q. 'What is your opinion as to whether or not it would be good medical and surgical practice for an orthopedic surgeon practicing in the City of Atlanta, after operating upon the right shoulder and failing to locate the calcium deposits in the right shoulder which were earlier seen on x-ray of the right shoulder, to close the incision without making additional x-rays of the involved area? A. 'Well, if one is sure then closure could be gone about safely, if there is any doubt then x-rays should be made.' Q. 'Assume that a patient such as Mrs. Andrews was operated on in the right shoulder to remove a calcified bursa and during the course of the operative procedure no solidified mass was found and removed, and the incision was closed up, patient returned to her room, but that the patient continued to complain of the same gritty type pain in her right shoulder as she complained of prior to the performance of the operative procedure, what is your opinion as to whether or not additional x-rays should be taken . . . in good medical and surgical practice of the patient's right shoulder before discharging fer from the the hospital?' A. 'If there was still persistent pain in the same location further x-ray studies and examinations should be carried out.' "

While the testimony of the defendant and his expert medical witness was in sharp conflict with the expert medical testimony of Dr. Myers, it is clear that the testimony of Dr. Myers, if accepted by the jury in preference to that offered in behalf of the defendant, when considered with the other evidence adduced in behalf of the plaintiff, was sufficient to authorize, though it

did not demand, a finding that the defendant did not exercise due diligence in performing the operation in question; and that because of his negligence a second operation was immediately necessary which according to Dr. Myers "probably delayed healing and returning of proper function" of the plaintiff's arm. "And where, measured by the method shown by medical witnesses to be negligence, the evidence shows a bad result, it is the province of the jury to say whether the result was caused by the negligence." *Pilgrim v. Landham,* 63 Ga. App. 451, 455, supra; *Word v. Henderson,* 220 Ga. 846, supra.

In reaching this conclusion we have not overlooked the well settled rule that a physician or surgeon is not an insurer and cannot always effect a cure. *Howell v. Jackson,* 65 Ga. App. 422, 423, supra. According to the defendant's own testimony, if a calcium deposit had been found by him during the first operation, dramatic relief could have been obtained for the plaintiff and the record shows that the plaintiff did experience immediate and dramatic relief from the intense pain which she had suffered before and after the first operation when the second operation was performed by Dr. Myers.

Nor have we overlooked the testimony adduced in behalf of the defendant or the testimony elicited from Dr. Myers on the skillful cross examination of him by defendant's counsel. It is necessary here only to determine if there was sufficient evidence to present an issue for the jury and not to determine if the evidence demanded a finding for the plaintiff, which it clearly did not do. As stated above, the evidence was in sharp conflict and the jury was authorized to find not only that the defendant was not negligent in failing to effect a successful result in the first operation, but that even if he had been negligent in not locating the calcium deposit and treating or removing it, the plaintiff's subsequent condition was not caused thereby but was wholly due to the negligence of Dr. Myers in the operation performed by him, and not to that of the defendant. On the other hand, a finding was authorized that the defendant was negligent, that because of his negligence a second operation had to be performed to effect a result which should have been accomplished by the defendant in the first operation; and that because

of the immediate necessity of performing the second operation, irrespective of how skillfully it was performed, delay in the healing and return to normal function of the plaintiff's right arm and shoulder was thereby occasioned for which the defendant would be responsible. *Piedmont Hospital v. Truitt*, 48 Ga. App. 232 (172 SE 237).

The determination of these very close and difficult issues of negligence and proximate cause was for the jury, and the trial court erred in granting the defendant's motion for judgment notwithstanding the mistrial.

*Judgment reversed. Felton, C. J., and Deen, J., concur.*