Janet Lynn **GRINDSTAFF**, a minor by Douglas Grindstaff, as next friend, Plaintiff-Appellant,

v.

Blanche D. **COLEMAN**, M.D., Defendant-Appellee.

No. 81–7471.

United States Court of Appeals, Eleventh Circuit.

July 29, 1982.

Percy J. Blount, Augusta, Ga., for plaintiff-appellant.

Fulcher, Hagler, Reed, Obenshain, Hanks & Harper, David Hanks, Burnside & Wall, Thomas R. Burnside, Jr., Augusta, Ga., for defendant-appellee.

Before TUTTLE, RONEY and CLARK, Circuit Judges.

PER CURIAM:

Appellant Grindstaff seeks reversal of the district court's directed verdict below. Because the district judge improperly excluded critical expert testimony, we vacate the judgment and remand.

Janet Lynn Grindstaff was born on October 3, 1969. Dr. Coleman was in charge of the delivery. Shortly after birth, the Grindstaff child began to experience exparimedial jerkings. As she grew older, it became apparent that she had serious physical problems. Janet Grindstaff is today profoundly retarded and a spastic quadraplegic. She requires constant care and is confined to a hospital where she will require custodial care for the rest of her life.

Plaintiff claimed before the court below that Dr. Coleman was negligent in the delivery at her birth. In order to support the claim that Dr. Coleman failed to "bring to the exercise of his [her] profession a reasonable degree of care and skill," Ga.Code Ann. § 84–924, plaintiff offered the testimony of Dr. Neil Wolfson. Dr. Wolfson testified on voir dire that at the time of the birth he was a third-year medical student at Louisiana State University working at Charity Hospital. In that position, he prescribed medication, delivered babies, performed surgery, and other functions of a physician under the supervision of a physician. The doctor became a licensed medical physician in 1971 and has since been Board Certified as an obstetrics and gynecological physician. He testified that he was familiar with the standard of care in 1969, the time of the Grindstaff birth, and that it was the same as in 1971, when he became licensed. The trial judge refused to allow Dr. Wolfson's testimony to be presented to the jury.

And while I think this witness would qualify in any other case as an expert, I don't think he's qualified as an expert to give an opinion as to medical standards, medical treatment, diagnosis; and, in a malpractice case as occurred in 1969, before he was a doctor. Now, I grant you that having a piece of paper that says that you are a medical doctor does not necessarily make you a better expert than not having it. But that is the Georgia rule, that you have to be a medical doctor to give that type of expert testimony in a malpractice case. And, I think under Georgia ruling, all he would quali-

fy as here would be as a layman with enough background and enough facts at hand to render a conclusion and opinion based upon those; but not as a medical expert competent to set standards in a malpractice case.

In essence, the trial judge ruled that Dr. Wolfson was not qualified to testify as an expert because at the time of the birth he was not a medical doctor.

■ Under Georgia law, there is a presumption that medical or surgical services are performed in an ordinarily skillful manner. The burden is on the party receiving the services to show want of due care, skill, and diligence. Ordinarily in Georgia, the proof required to overcome such a presumption of care, skill, and diligence is given by physicians or surgeons as expert witnesses. The Georgia courts have traditionally felt it was important that physicians be judged by physicians and have even quoted Aristotle to that effect. "As the physician ought to be judged by the physician, so ought men to be judged by their peers." *Shea v. Phillips,* 213 Ga. 269, 98 S.E.2d 552, 555 (1957). The Georgia rule is that the standard of care is ordinarily established through the testimony of expert witnesses. *See, e.g., Robertson v. Emory University Hospital,* 611 F.2d 604, 606 (5th Cir. 1980); *Kenney v. Piedmont Hospital,* 136 Ga.App. 660, 222 S.E.2d 162, 167 (1975); *Shea v. Phillips,* 213 Ga. 269, 98 S.E.2d 552, 555 (1957); *Hayes v. Brown,* 108 Ga.App. 360, 133 S.E.2d 102, 106–07 (1963); and *Mayo v. McClung,* 83 Ga.App. 548, 64 S.E.2d 330, 335 (1951). However, no case has been cited by the parties or found by the court that requires that the expert be a doctor at the time of the incident.

The issue is whether Dr. Wolfson was qualified to testify as to the standard of care that was applicable at the time the plaintiff, Janet Lynn Grindstaff, was born. At the time of the trial, Dr. Wolfson was "qualified as an expert by knowledge, skill, experience, training, or education," to "testify in the form of an opinion or otherwise." Fed.R.Evid. 702. The appellee contends that "[i]n the case at bar the plaintiff failed to show expert knowledge by its (sic) witness as to the applicable prevailing standards of practice in the medical profession in 1969." Brief of Appellee at 22. This contention plainly falls in the face of the uncontroverted evidence given by Dr. Wolfson that he knew those prevailing standards.

■ Appellee further argues that the trial court's ruling should be sustained because of the authorities [1] which hold that the qualification of an expert and whether one should be permitted to testify rest in the sound discretion of the trial judge whose ruling will not be overturned unless there is a clear abuse of discretion. The trial court in this case did not exercise discretion. The court's sole reason for finding Dr. Wolfson unqualified was that Dr. Wolfson did not have his medical license to practice on the date of the birth of the plaintiff. The court found that Dr. Wolfson had the knowledge, but lacked only the license. The notes of the Advisory Committee on the proposed rules which accompany Rule 702 of the Federal Rules of Evidence are helpful on this point:

> An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge. The most common source of this knowledge is the expert witness, although there are other technics for supplying it.
>
> Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded. The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts . . . .

---

1. *United States v. Huber,* 603 F.2d 387, 399 (2d Cir. 1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *Perkins v. Volkswagen of America, Inc.,* 596 F.2d 681, 682 (5th Cir. 1979); *United States v. King,* 532 F.2d 505 (5th Cir.), *cert. denied,* 429 U.S. 690, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976). *See* J. Weinstein & M. Berger, 3 Weinstein's Evidence ¶ 702[04] (1981).

A rule which would require an expert witness to have been an expert at the time of the questioned event would prevent proof based upon knowledge of historical events. Application of standards to conduct which predates the oldest living expert would be excluded by such a ruling as made by the trial court in this case.

■ By holding that a doctor or other expert need not be licensed on the date of the event about which he testifies, we take nothing away from the discretionary power of the trial court to determine whether "a witness [is] qualified as an expert by knowledge, skill, experience, training, or education." Fed.R.Evid. 702. If an expert witness does not meet this disjunctive test in the opinion of the district court, that judgment normally would not be disturbed. Conceivably, an expert could be impaired by the lapse of time between the date of his license and the date of the event in question; it is obvious that such does not exist in this case. Consequently, the judgment of the district court is VACATED and the case REMANDED for further proceedings in light of this opinion.