[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 28, 2006
THOMAS K. KAHN
CLERK

No. 05-17095
Non-Argument Calendar

_____

D. C. Docket No. 04-02680-CV-TWT-1

ALONZO SUGGS,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 28, 2006)**

Before TJOFLAT, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Alonzo Suggs, a federal prisoner currently held at the Federal Correctional

Institution in Ashland, Kentucky ("FCI-Ashland"), filed a pro se complaint against the United States under the Federal Tort Claims Act ("FTCA"), alleging that during the course of being transferred from Illinois to FCI-Ashland, he was temporarily housed in the United States Penitentiary in Atlanta ("USP-Atlanta"), where he contracted a Methicillin-Resistant Staphylococcus Aureus ("MRSA")[1] infection, commonly known as a "staph infection," due to the unsanitary conditions in the facility and the negligent medical care that he received while housed there.[2]

Specifically, Suggs alleged and testified at his deposition that after arriving at USP-Atlanta, he developed a rash and wound on his thigh that became infected because he was forced to sleep on a mattress on a filthy floor in an overcrowded cell. Suggs acknowledged that, prior to his arrival at FCI-Ashland, he had received prison rules and regulations explaining that he should request sick call if he had a medical problem, at which time the medical staff would review the request and visit his cell to evaluate the problem. Suggs also understood that inmates were given cleaning supplies and were responsible for cleaning their cells, but he contended that he had not received materials despite requesting them several times.

Suggs further testified that on April 22, he noticed the rash, which he

---

[1] MRSA is a type of staph infection that is resistant to many antibiotics.

[2] The record shows Suggs was at USP-Atlanta from April 21 through April 30, 2003.

thought was a bug bite because he slept on a mattress on the floor. He requested a sick call, but the physician's assistant ("PA") did not visit him. The reddish rash became larger and started to swell, becoming painful and tender. On April 23, the rash was still swollen, and the skin appeared to be pulsating. Suggs again requested sick call and spoke to one of the officers. By April 24, the wound had started to bleed and ooze. Suggs requested medical attention again, this time speaking to a different officer. Suggs showed the officer his wound, but Suggs was not visited by any medical staff. Suggs ultimately spoke with six people in his attempt to obtain medical attention.

Suggs testified that on April 25, a PA came by his cell and viewed his leg from outside of his cell through an opening in the door. The PA told Suggs that it was nothing and that Suggs should place his name on the sick call sheet. Although he also experienced fever, diarrhea and stiffness, Suggs contended he received no treatment and no medication at USP-Atlanta. Upon arriving at FCI-Ashland, Suggs learned that he had MRSA and was treated and placed in isolation for eight days. The infection cleared and has not recurred.

Suggs stated that Lewis Brescoach, a medical professional at FCI-Ashland, told him that MRSA is a serious condition that can become fatal if untreated, that it lies dormant on clothes, mutates, and breaks down the immune system. Suggs

3

claimed that it is common sense that unsanitary conditions caused his infection.

Suggs's complaint seeks $7 million in damages. He attached medical and transfer notes purportedly indicating that he was not prescribed any medications when he arrived at USP-Atlanta or when he was transferred to FCI-Ashland and that he arrived at Ashland without medication and with an open lesion on his leg.

Suggs moved for appointment of counsel before the district court, explaining that he could not afford to hire an attorney, the case involved complicated facts and legal issues, and the law library at FCI-Ashland was incomplete. The court denied the motion, finding that the case did not involve complex issues or present extraordinary circumstances that would warrant appointing counsel.

Ultimately, the United States moved for summary judgment, attaching several declarations to its motion. Rafael Roman, a licensed physician and the clinical director of USP-Atlanta, declared that staph infections are caused by common bacteria found on the skin or in the nose of healthy people, though they can cause minor skin infections or more serious wound infections. Roman further stated that a staph infection is usually contracted through contaminated hands and that MRSA is most often found in hospitals, but that it can occur spontaneously. Roman explained that the medical staff at USP-Atlanta sees about 120 inmates per day and must triage those inmates. Roman stated that the policy with respect to

abscesses is to drain the abscess and take a culture, but if the abscess is not severe, the inmate will be triaged and will wait for further treatment.

Lillian Jiminez, the Bureau of Prison's ("BOP") Southeast Regional Health Services Administrator, reviewed the medical records and attested that Suggs had been seen by a PA at USP-Atlanta and prescribed and treated with Bacitracin/Polymixin B Ointment and Cephalexin. Upon his transfer to FCI-Ashland, medical staff took a culture, confirming that the infection was MRSA, and placed Suggs in isolation.

Atlanta Senior Officer Todd Jenkins declared that he had spoken with Suggs while on rounds at USP-Atlanta and that he escorted Suggs to the PA and was present while Suggs was treated. In a supplemental statement, Jiminez explained that Suggs's transfer paperwork was completed before the medication prescription had been filled. Suggs submitted his own declaration, denying that he had received medical treatment or medication at USP-Atlanta and contending that he was being transferred to FCI-Ashland at the time he supposedly received a prescription.

The district court granted summary judgment to the United States, finding that (1) with respect to claims of unsanitary conditions, Suggs had not established any duty on the part of the BOP with respect to those conditions and no causal connection between the alleged unsanitary conditions and Suggs's infection with

5

MRSA; (2) with respect to the medical malpractice allegations, Suggs had not submitted any expert testimony to show that the treatment fell below the applicable standard of care; and (3) even if Suggs could show negligence, he had not shown causation. The court noted that there is a presumption that the proper level of care was provided and found that Suggs had not met his burden of showing otherwise. Although the court further noted that an exception exists where conduct was obviously negligent, that exception did not apply to Suggs's allegations.

Suggs moved to alter or amend judgment under Federal Rule of Civil Procedure 59(e), seeking further discovery, accusing the United States of committing perjury and fraud upon the court, and challenging the credibility of Dr. Roman. Suggs further argued that the staff had been deliberately indifferent to his medical needs. The court denied the motion, finding that it was without merit.

**Discussion**

Appointment of Counsel

Suggs first argues that the court abused its discretion by denying his motion for appointment of counsel, as the court cannot erect unnecessary procedural barriers that make it impossible for pro se litigants to present their cases. Suggs contends that his case was complex, he was unable to present his case adequately without assistance of counsel, and counsel was necessary given the conflicting

6

testimony and the need to present evidence. He also asserts that providing him with counsel would have assisted the court.

We review the denial of a plaintiff's motion for appointment of counsel for abuse of discretion. Bass v. Perrin, 170 F.3d 1312, 1319 (11th Cir. 1999). A plaintiff in a civil case has no constitutional right to counsel. Id. at 1320. The decision to appoint counsel is within the district court's discretion, and the court should appoint counsel only in exceptional circumstances. Dean v. Barber, 951 F.2d 1210, 1216 (11th Cir. 1992). "The key is whether the pro se litigant needs help in presenting the essential merits of his or her position to the court." Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993).

Here, the district court did not abuse its discretion in denying Suggs's motion because the facts and legal issues were not so complex as to require counsel. Suggs has not established that he is unable to present his claims without the assistance of counsel. Cf. id. at 193-94. Furthermore, a review of the record indicates that Suggs was able to present his arguments and cite legal standards despite his pro se status. Accordingly, we affirm the district court's denial of his motion for the appointment of counsel.

Summary Judgment

Suggs next argues that summary judgment was improper because he provided the court with the "bare bones" of his cause of action for medical negligence, and the lack of legal materials at FCI-Ashland made it impossible for him to further argue his case. He notes that he was without the assistance of counsel and states that he did not know the elements he had to establish to succeed on his claims. He further notes that the district court found his claims meritorious when it permitted him to proceed under section 1915A.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Skrtich v. Thorton, 280 F.3d 1295, 1299 (11th Cir. 2002). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c).

In analyzing a claim under the FTCA, we apply the law of the state where the alleged tort occurred. Stone v. United States, 373 F.3d 1129, 1130 (11th Cir. 2004). In Georgia, "[a] person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill." O.C.G.A. § 51-1-27. "Any injury resulting from want of such care and skill shall be a tort for which a recovery may be had."

8

Id. A plaintiff bringing a malpractice claim must establish three elements: "(1) the duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure be the proximate cause of the injury sustained." Hawkins v. Greenberg, 304 S.E.2d 922, 923 (Ga. Ct. App. 1983).

Here, the parties dispute whether medical staff breached a duty of care. Suggs asserts that the PA gave his leg only a cursory look, which did not constitute a medical examination. The United States contends, however, that Suggs was examined and received medical treatment in Atlanta. Although generally summary judgment is improper where credibility is at issue, here there is a presumption "that the medical or surgical services were performed in an ordinarily skil[l]ful manner, and the burden is on the one receiving the services to show a want of due care, skill, and diligence." Shea v. Phillips, 98 S.E.2d 552, 554 (Ga. 1957).

A plaintiff may not rely on his own statements and lay opinions to avoid summary judgment. Parker v. Knight, 267 S.E.2d 222, 223 (Ga. 1980); Lawrence v. Gardner, 270 S.E.2d 9, 11 (Ga. Ct. App. 1980). Suggs has offered no other evidence to rebut the presumption that he was provided medical care in an ordinarily skillful manner. Moreover, he has failed to establish proximate causation. Accordingly, we **AFFIRM** the district court.