62925. SANDFORD et al. v. HOWARD.

SHULMAN, Presiding Judge.

Appellants, podiatrists practicing in Brunswick, Georgia, saw appellee Kimberly Howard on January 10, 1977, and diagnosed her as having what is commonly known as flat feet. After consultation with an orthopedic surgeon, appellants had appellee admitted to a local hospital where they performed an operation known as the Young-Lowman Suspension procedure on both of appellee's feet. Not satisfied with the results of the operation, appellee, by next

friend Linda Brown (her mother), brought suit against appellants, alleging that they had been negligent in their diagnosis and in their choice of the method of treatment of her foot ailment. Through a motion in limine, appellants sought to prevent appellee's use of physicians (orthopedic surgeons) not licensed as podiatrists as expert witnesses on the standard of care required of appellants. It appearing that the question of whether a physician or surgeon of one school of practice is competent to testify as an expert in a malpractice case against a member of another school of practice is one of first impression in Georgia, we granted appellants' application for interlocutory appeal after the trial court denied the motion in limine.

1. The General Assembly has statutorily differentiated between orthopedists (subsumed under medical physicians) and podiatrists. Medical physicians, licensed under the provisions of Code Ann. Ch. 84-9, are required to graduate from a two-year premedical college curriculum in addition to a medical or osteopathic college, work as a hospital intern for one year, and pass an examination. Code Ann. §§ 84-907 and 84-911. Podiatrists, who are regulated by the provisions of Code Ann. Ch. 84-6, must graduate from a four-year college of podiatric medicine, complete a one-year internship and pass an examination. Code Ann. § 84-603. Orthopedics, though not statutorily defined, is medically described as "[t]hat branch of surgery which is specially concerned with the preservation and restoration of the function of the skeletal system, its articulations and associated structures." Dorland's Illustrated Medical Dictionary (25th Ed.). Podiatry is statutorily defined as "the diagnosis, medical, surgical, mechanical, manipulative and electrical treatment limited to the ailments of the human foot and leg. No podiatrist shall do any amputation or use any anesthetic other than local." Code Ann. § 84-601. From the statute we can discern that, insofar as the human foot and leg are concerned, a podiatrist is capable of rendering the same treatment an orthopedist may give, short of amputation.

2. As a person professing to practice surgery or the administering of medicine for compensation, a podiatrist must bring a reasonable degree of care and skill to his profession. Code Ann. § 84-924. Georgia law presumes that the practitioner, in this case a podiatrist, exercises his skills in a skillful manner, and the burden is on the one who alleges malpractice to show a lack of due care, skill, and diligence. *Slack v. Moorhead,* 152 Ga. App. 68, 71 (262 SE2d 186). Expert testimony is required in order to overcome the presumption of care, skill, and diligence. See *McCormick v. Avret,* 154 Ga. App. 178 (2) (267 SE2d 759).

3. The orthopedists in question may be qualified expert witnesses. "A witness with such skill, knowledge or experience in a

field or calling as to be able to draw an inference that could not be drawn by the average layman may be qualified as an expert witness. [Cit.]" *Avret v. McCormick,* 246 Ga. 401 (271 SE2d 832). The question is whether they are competent to testify.

4. The general rule is that a member of a school of practice other than that to which the defendant belongs is not competent to testify as an expert in a malpractice case. 85 ALR2d 1022, § 2. Under this rule, the orthopedists (allopaths) are not competent to testify against the podiatrists. However, an exception to that rule and the trend we perceive in several Georgia cases lead us to conclude that these orthopedic surgeons may testify regarding the standard of care required of podiatrists in the diagnosis and treatment of flat feet. Their membership in a school of practice different from that of appellant may affect the weight given their opinions or evaluations but not the admissibility of those opinions. See *Petty v. Folsom,* 229 Ga. 477 (2) (192 SE2d 246).

5. All of the orthopedic surgeons whose testimony is anticipated stated in their depositions that they had treated patients for flat feet, and each was aware of the Lowman-Young Suspension procedure utilized by appellants on appellee. While not all of the orthopedists had performed such an operation, such experience is not a prerequisite to giving testimony. See *Brisendine v. Hunt,* 43 Ga. App. 115 (2) (158 SE 469). Several of the physicians stated that "the Bible of orthopedics," *Campbell's Orthopedics,* listed the operation as an acceptable procedure. Each of the orthopedists stated that methods more conservative than surgery existed for the treatment of flat feet, and each voiced his opinion that the more conservative methods should be used prior to resorting to surgery. In their depositions, both of the podiatrists recognized conservative treatment in addition to the Lowman-Young procedure as a regimen for the treatment of flat feet. Where there is proof by competent evidence that the methods of treatment are the same despite the difference in the nomenclature of the schools involved, the witness is competent to testify. Drummond v. Hodges, 417 SW2d 740 (Tex. 1967); Musachia v. Terry, 140 S2d 605 (Fla. 1962); James v. Falk, 226 Ore. 535 (360 P2d 546, 548) (1961). The depositions of the allopaths and the podiatrists also show that the diagnosis and treatment of flat feet is not limited to podiatrists, but is an area in which the fields of medicine overlap. This fact reinforces our position that the orthopedists are competent to testify. See Alexander v. Mt. Carmel Medical Center, 56 Ohio St2d 155 (383 NE2d 564) (2) (1978); Morrill v. Komasinski, 256 Wis. 417 (41 NW2d 620) (1950).

6. In several malpractice cases decided in the past, this court has stated that the jury, as the judge of what constitutes ordinary care

and what constitutes negligence, is not confined to the testimony of the defendant's school of practice. See *Kahn v. Shaw,* 65 Ga. App. 563, 568 (16 SE2d 99); *Mims v. Ragland,* 59 Ga. App. 703 (7) (2 SE2d 174). In *Kahn,* a malpractice case against an optometrist, an eye specialist was permitted to testify concerning the proper method of examining and measuring eyes for glasses. In *McCormick v. Avret,* supra, a nurse experienced in drawing blood was held to be competent to testify as to the standard of care required to keep sterile a needle used to draw blood. The above-cited cases support the theory that the barriers between schools of practice are not insurmountable in this state.

7. We herein recognize a difference between cases involving podiatrists and allopaths and cases involving chiropractors or naturopaths and physicians. Unlike podiatrists, the latter schools differ from the allopathic school of medicine in their belief as to the origin of discomfort and the means of relief, and such differences have been statutorily noted. See Code Ann. §§ 84-501 and 84-2901.

8. As is evident from the above analysis, we will not adopt the reasoning enunciated in Darby v. Cohen, 101 N. Y. Misc. 2d 516 (421 N.Y.S.2d 337); Whitehurst v. Boehm, 41 N. C. App. 670 (255 SE2d 761); and Dolan v. Galluzzo, 77 Ill. 2d 279 (396 NE2d 13), cases in which those courts refused to allow allopaths to testify in podiatric malpractice cases.

*Judgment affirmed. Birdsong and Sognier, JJ., concur.*

DECIDED MARCH 3, 1982.

*Timothy F. Callaway III,* for appellant.
*Sam Engram, Jr., Robert Killian, Albert Fendig,* for appellee.