## 70942. McCLURE v. CLAYTON COUNTY HOSPITAL AUTHORITY et al.

(336 SE2d 268)

BIRDSONG, Presiding Judge.

Plaintiff, Gerald McClure, brings this appeal from the grant of summary judgment to the defendants, Clayton County Hospital Authority and Dr. Feroze Yusufji. McClure injured himself while cutting down a tree on December 23, 1979, and required surgical treatment for his left arm. Dr. Yusufji treated McClure for the first time immediately after his accident for a lacerated elbow. The laceration was partially closed, and McClure returned for follow-up surgery on January 1, 1980.

Plaintiff was given some medication prior to being taken into the operating room, but he was conscious and talked to the nurses and the anesthetist. Dana Boehmer, an operating room nurse, helped place McClure on the operating table, which was covered by a mattress several inches thick. The right arm was supported by an "arm board" with a plastic mattress on top. The board supported the arm so that the intravenous solution flowing into that arm was accessible to the anesthetist. The left arm was to be operated on and it also was supported by an arm board. That arm board was not padded. It was colored white and had a red cross painted on it. It was approximately one-half of an inch thick, four feet long, and from 12 to 16 inches wide. Nurse Boehmer stated that she placed the arm board under the arm and "under the mattress" at the top of the arm and then placed a sheet over the board. The sheet was over the board portion that protruded from the table but not over that portion under the mattress. Nurse Crews, who was assisting in the operation, said the left arm board was placed under McClure's "upper back, right up above the shoulder about to mid-back."

McClure stated that the left arm board, which was white in color with a red cross on it, was placed underneath his body and *over* the top of the mattress. His medical gown was open in the back and the board was directly against his skin, "in the small of my back." Plaintiff said he complained of the pain to the nurse and the anesthetist, but all the nurse did was to place another pillow under his shoulder. McClure said the left arm board was visible to Dr. Yusufji when he performed his surgical procedure and he "tried to tell him that I was hurting. It wasn't right." The first thing plaintiff remembered when coming out from under the anesthesia was screaming because of the pain in his back. After referrals to different doctors, he was finally diagnosed as having a "slipped" or "herniated" disc. An operation was performed to remove the disc but the pain has not subsided.

Defendants moved for summary judgment and submitted the affidavits of Dr. Yusufji, and nurses Boehmer and Crews. Dr. Yusufji

stated that he had personal knowledge of the facts set forth in his affidavit and was a medical doctor specializing in orthopedic surgery. In his care and treatment of the plaintiff, he says he met or exceeded the standard of care exercised by other physicians and medical doctors generally under like conditions and circumstances. He states that when he entered the operating room, plaintiff McClure had already been placed on the operating table and the supporting hand boards were in place and covered by a sheet. He was not able to see where the hand boards had been placed insofar as their location on plaintiff's back. Dr. Yusufji was also of the medical opinion that nothing Clayton General Hospital, its nurses or employees, did or failed to do proximately caused or contributed to the plaintiff's pain and discomfort he expressed about his "low back or to the conditions giving rise to the surgery" that plaintiff underwent at a subsequent date.

Plaintiff presented the affidavits of one medical doctor and two doctors of chiropractic medicine. Both chiropractors stated that they had "examined certain records and documents" in this case and in their professional opinion, although plaintiff's back problem pre-existed defendant's surgery, the improper placement of the hand board could have caused and most likely did contribute to plaintiff's low back complaint which required the subsequent surgery. The "certain records" referred to in the affidavit were neither attached, nor were they otherwise identified. Nor did the chiropractors state that their affidavits were made on their personal knowledge.

Dr. Willingham, a medical doctor, executed an affidavit on behalf of the plaintiff, that he was aware of the standard of care, skill, and diligence exercised by other physicians and surgeons, and was of the opinion that placing a hand board directly against a patient's back, between the body and the mattress, was not a proper placement and did not meet the standard of medical care exercised by others generally under like conditions and circumstances.

The trial court found that neither of the chiropractor's affidavits had probative value because they merely stated that they had reviewed "certain records" which had not been attached to their affidavit or otherwise identified, and did not state that they had personal knowledge of the facts upon which their opinion was based. The court found that this was a malpractice action and there was no expert testimony that the alleged malpractice of the defendants caused or contributed to the injuries complained of and there was no material issue of fact, and summary judgment was granted to defendants. Plaintiff brings this appeal. *Held*:

1. The basis for medical malpractice actions is OCGA § 51-1-27, which provides in part, that the person professing to practice medicine "must bring to the exercise of his profession a reasonable degree of care and skill." Injury resulting from want of such care is a

tort. *Sullivan v. Henry*, 160 Ga. App. 791, 800 (287 SE2d 652). Our law presumes that a physician and surgeon performs his healing art in an ordinarily skillful manner and the burden is on the one who denies it to show the lack of due care, skill, and diligence. *Shea v. Phillips*, 213 Ga. 269, 271 (98 SE2d 552). The proof ordinarily required to overcome such presumption of care, skill, and diligence is that given by physicians or surgeons as expert witnesses. Id. Where a defendant surgeon in a medical malpractice suit introduces his own affidavit as an expert witness in support of his motion for summary judgment that he performed his medical services in conformity to the skill, care, and diligence generally exercised by other surgeons in his profession and plaintiff fails to oppose the affidavit by contrary expert opinion evidence, the defendant doctor is entitled to summary judgment in his favor, provided that actionable negligence does not appear so clearly from the evidence of record that expert testimony is unnecessary to establish a prima facie case. *Terrell v. West Paces Ferry Hosp.*, 162 Ga. App. 783 (1) (292 SE2d 433).

"Only in extreme circumstances, where the error of judgment or result of treatment is so gross, and negligence is clear and palpable, may the plaintiff-patient overcome this presumption and meet his evidentiary burden without producing expert testimony to the effect that the defendant-physician violated the required degree of care and skill." *Hyles v. Cockrill*, 169 Ga. App. 132, 138 (312 SE2d 124); accord *Shea*, supra (2). Our courts have held that the only exception to the requirement to produce expert medical testimony showing deviation from the applicable standard is one in which the facts concerning the alleged malpractice, " 'although connected with medicine, are so well known as not to require expert testimony to place them before the jury, or where the case concerns matters which juries must be credited with knowing by reason of common knowledge. [Cits.]' Stated another way, this evidentiary burden on plaintiff-patients to produce such expert medical testimony is applicable except in those cases where the asserted actionable negligence would appear to be so clear from the evidence then of record that expert testimony would, at that point, otherwise be unnecessary to establish a prima facie case of malpractice." *Killingsworth v. Poon*, 167 Ga. App. 653, 655 (307 SE2d 123). We do not find that placement of a hand board underneath a patient to be such an obvious act of negligence, or is so gross or clear and palpable act of negligence, to obviate the necessity for expert testimony to refute a defendant's expert opinion.

Similarly, we must reject any argument that the instant factual situation is covered by the doctrine of res ipsa loquitur. *Terrell v. West Paces Ferry Hosp.*, supra; *Hill v. Hosp. Auth. of Clarke County*, 137 Ga. App. 633 (8) (224 SE2d 739); *Young v. Yarn*, 136 Ga. App. 737 (2) (222 SE2d 113); *Tuggle v. Hosp. Auth. of Gwinnett County*,

133 Ga. App. 318 (1) (211 SE2d 167).

2. Plaintiff has elected not to submit a transcript of the proceedings below and we must rely totally upon the record. Plaintiff presented the affidavits of two chiropractors and he argues that they have established a material issue for trial. Both stated that plaintiff's back problem probably pre-existed his surgery by defendants but improper placement of the hand board most likely contributed to his back problems since that time. Neither affidavit stated that it was made on personal knowledge of the affiant, and both referred to "certain records and documents" as a basis for their opinion, without attaching sworn or certified copies of all papers referred to, as required by OCGA § 9-11-56 (e). Neither were the "certain records and documents" "clearly identified" so that the trial court and this court could ascertain if they were among those medical records included in this record. Such identification could have cured this particular deficiency. *Jones v. Rodzewicz*, 165 Ga. App. 635, 637 (302 SE2d 402). This court faced a similar issue in *Childs v. Christmas*, 171· Ga. App. 756 (320 SE2d 629), in which the affiant did not state he had personal knowledge of the facts and based his opinion on medical records neither attached nor otherwise clearly identified. We found the affidavit lacking in probative value. Accord *Crawford v. Phillips*, 173 Ga. App. 517 (326 SE2d 593); *Hayes v. Murray*, 252 Ga. 529, 530 (314 SE2d 885). Hence, we find the affidavits of the two chiropractors lacking in probative value and are as a matter of law insufficient to raise a material issue for trial.

3. The affidavit of Dr. Willingham, a medical doctor, poses a different problem. It also does not state that it is based upon the personal knowledge of the affiant, but was based upon examination of "certain documents." It merely concludes that placement of a hand board · directly between a patient's back and the operating table's mattress does not meet the standard of medical care exercised by doctors generally. The plaintiff stated that the nurse did place the hand board immediately against his back, on top of the operating table's mattress. Thus, there is evidence in the record of the fact used as the basis for Dr. Willingham's opinion. See *Jones*, supra (1); *Jobson v. Dooley*, 164 Ga. App. 440, 442 (296 SE2d 388). However, the affidavit of Dr. Willingham does not state that any alleged departure from the standard of care caused or contributed to the injury or damage to the appellant. In order for a plaintiff to recover for malpractice, there must be sufficient evidence that the physician's alleged failure to use the requisite degree of skill and diligence in treatment either proximately caused or contributed to plaintiff's injury. *Jobson*, supra. The affidavit of Dr. Willingham failed to show any causation as to the alleged injury of the appellant which could be attributed to the appellee Dr. Yusufji.

The placement of the hand board was made by nurse Boehmer. She made such placement before Dr. Yusufji entered the operating room. Although the outline of the left arm board was visible, where it protruded away from the operating table, it was covered by a sheet, and Dr. Yusufji stated he was unable to see where the board was placed under the patient. There is no evidence in the record to refute this statement.

This court, in *Porter v. Patterson*, 107 Ga. App. 64 (1) (129 SE2d 70), adopted the rule that a non-charitable hospital is liable for the negligence of its nurses, orderlies, and other employees, in the performance of their administrative and clerical duties, even though their act may constitute a part of a patient's prescribed medical treatment by a doctor, if the act did not require the application of a specialized technique or the understanding of a skilled physician or surgeon. Id. p. 72. Where no unusual acts were involved which called for an exercise of medical skill or experience, a doctor may reasonably take for granted that the experienced nurses on the staff of a modern hospital will attend to their ordinary and customary nursing duties without his detailed instructions. Id.; accord *Goodman v. St. Joseph's Infirmary*, 144 Ga. App. 614, 617 (241 SE2d 487); *Su v. Perkins*, 133 Ga. App. 474 (1) (211 SE2d 421). Of course, there is the additional rule that when a hospital yields control of its employees to a surgeon in the operating room and the surgeon exercises immediate personal supervision over those employees, "then he becomes their master and their negligence during the course of the master servant relationship will be imputed to him." *Swindell v. St. Joseph's Hosp.*, 161 Ga. App. 290, 291 (291 SE2d 1). It is clear from the evidence of record that the placement of the hand board was that of the nurses and was completed before the surgeon entered the operating room, and he did not supervise the placement of the left arm board which had been covered by a sheet. These acts preceded his appearance and were not made under his "immediate personal supervision" so as to bring him under the rule of *Swindell*. Accord *Miller v. Atkins*, 142 Ga. App. 618, 619 (236 SE2d 838). Neither can we find that the placement of a hand board is such an act as would require application of a specialized technique or the supervision of a skilled physician or surgeon. *Porter*, supra; *Goodman*, supra; *Su*, supra. Accordingly, we find no evidence of actionable negligence of Dr. Yusufji in the record, and it was not error for the trial court to grant summary judgment in his favor.

4. We turn next to the liability of the hospital. Pretermitting the issue of whether the evidence of the placement of the hand board by nurse Boehmer under the plaintiff was sufficient to raise the issue of negligence, there are three elements a plaintiff must establish to show malpractice liability: (1) the duty of the hospital, (2) the breach of that duty by failing to exercise the requisite degree of skill and care,

and (3) that the failure of the hospital to exercise such requisite skill and care was the proximate cause of the injury sustained. Cf. *Hawkins v. Greenberg*, 166 Ga. App. 574, 575 (304 SE2d 922). "Negligence alone is insufficient to sustain recovery. It must be proven that the injury complained of proximately resulted from such want of care or skill. A bare possibility of such result is not sufficient." Id.; accord *Maddox v. Houston County Hosp. Auth.*, 158 Ga. App. 283, 284 (279 SE2d 732). The record before us, absent the affidavits of the chiropractors, is totally devoid of any causal connection between the nurse's actions and the alleged injury suffered by plaintiff. *Maddox*, supra; *Parrott v. Chatham County Hosp. Auth.*, 145 Ga. App. 113, 115 (243 SE2d 269). The trial court properly granted summary judgment to the hospital on the affidavit of Dr. Yusufji when he stated that it was his professional opinion that the placement of the hand board "did not in any way cause or contribute to the plaintiff's low back complaints and subsequent surgery performed" on him. Dr Yusufji was of the opinion that plaintiff's back problem pre-existed the surgery he performed. This medical opinion as to causation of the injury complained of was not refuted nor is it a subject which is so clear, and so well known as not to require expert testimony, or a matter which a jury must be credited with common knowledge so as to negate the necessity for expert opinion. *Hyles v. Cockrill*, supra; *Killingsworth v. Poon*, supra; *Maddox v. Houston County Hosp. Auth.*, supra, p. 284; see also *Terrell v. West Paces Ferry Hosp.*, supra; *Shea v. Phillips*, supra.

*Judgment affirmed. Carley, J., concurs. Sognier, J., concurs specially.*

SOGNIER, Judge, concurring specially.

I concur fully in the majority's opinion. I concur specially to add that in Division 2, the majority noted that the affidavit testimony of the two chiropractors did not include any statement that the attending physician failed to exercise the skill and care employed by the medical profession generally in the treatment of the patient. In my opinion, even had the affidavits contained such a statement, the affidavits would have raised no question of fact in this malpractice action because regardless of these affiants' qualifications, the opinion of a chiropractor not qualified as a medical doctor should not be used to establish the standard of care required by the defendant medical doctor. *Sandford v. Howard*, 161 Ga. App. 495, 498 (7) (288 SE2d 739) (1982); *Shea v. Phillips*, 213 Ga. 269, 271 (2) (98 SE2d 552) (1957). See *Botehlo v. Bycura*, 320 SE2d 59 (S.C. App. 1984); *Lundgren v. Eustermann*, Supreme Court of Minn., decided July 12, 1985. But see *Sandford*, supra; *Avret v. McCormick*, 246 Ga. 401 (271 SE2d 832) (1980).

DECIDED SEPTEMBER 24, 1985 —
REHEARING DENIED OCTOBER 15, 1985 —

*J. Dunham McAllister*, for appellant.
*William H. Duckworth, Jr.*, for appellees.