Bernice Burnett Craig appeals from a summary judgment entered in favor of Dr. David Borcicky, a licensed doctor of podiatric medicine, in a malpractice action. Craig first went to Borcicky complaining of foot problems on September 13, 1985. Borcicky treated Craig for an ingrown toenail and for a callus on the bottom of her foot. This treatment continued for approximately 11 months; then Borcicky suggested surgery to remove Craig's ingrown toenail, the callus, and a bump. Borcicky performed surgery on Craig in his office on August 14, 1986. Following the surgery, Craig returned to Dr. Borcicky's office several times complaining of swelling and pain. Subsequently, she developed an infection, was hospitalized, and was treated by an orthopedic surgeon, Dr. Zarzour. Craig *Page 1255 
claims that as a result of the surgery performed by Dr. Borcicky, she has trouble walking and has had to give up her job.
On August 14, 1987, Craig filed an action against Borcicky, alleging that he negligently performed surgery on her feet and that she was not properly informed about the surgical procedures and thus did not give an informed consent to the surgery. Borcicky filed a motion for summary judgment, and the trial court entered summary judgment for Borcicky on July 1, 1988. According to the case action summary sheet, on July 6, 1988, Craig filed a motion to set aside the summary judgment or "in the alternative to extend time to produce an affidavit stating that the services of the designated orthopedic surgeon had been retained." In support of that motion, Craig filed an affidavit of Dr. Zarzour in which he stated that he was prepared to testify regarding the treatment of her feet. On August 19, 1988, the motion to set aside the summary judgment was granted. The case action summary sheet states, "[T]he court further rules that Dr. Zarzour is not an expert." Borcicky renewed his motion for summary judgment on September 19, 1988. Craig filed a deposition of Dr. Zarzour on November 4. The trial court again entered summary judgment in Borcicky's favor on November 30, 1988.
Craig presents two issues on appeal. First, she claims that the trial court erred in not accepting Dr. Zarzour's deposition as expert testimony on her claim against Borcicky. Second, Craig argues that her claim of failure to obtain informed consent presents a question of fact for the jury, thereby precluding summary judgment.
Generally, the question of whether a witness is qualified to give expert testimony is a question left to the discretion of the trial court and the court's ruling will not be disturbed unless it is found that the trial court abused its discretion.Bell v. Hart, 516 So.2d 562 (Ala. 1987). The general rule is that a physician of one school of medicine is incompetent to testify in a malpractice case against a physician of another school of medicine. Wozny v. Godsil, 474 So.2d 1078 (Ala. 1985); 61 Am.Jur.2d Physicians and Surgeons, § 353, p. 516 (1981). Craig contends that Dr. Zarzour is qualified to evaluate medical problems related to the foot and to treat foot problems because of his orthopedic training. Her argument is based on the fact that podiatrists are not subject to Alabama's Medical Liability Act. Ala. Code 1975, § 6-5-482. Sellers v.Picou, 474 So.2d 667 (Ala. 1985). She contends that a podiatrist should be judged by a negligence standard in an action for personal injury rather than by the standard of care defined in the Medical Liability Act at § 6-5-484. She asserts that, because podiatrists are under the shorter personal injury statute of limitations, they should be subject to the personal injury "reasonable person" standard of care as well.
Expert testimony is necessary to show whether Borcicky was negligent in performing the surgery on Craig. "The need for expert testimony does not necessarily depend upon the type of profession which the defendant practices." TuscaloosaOrthopedic Appliance Co. v. Wyatt, 460 So.2d 156, 161 (Ala. 1984). Instead, it is dependent upon whether the average person is able to decide, without expert testimony, whether the procedure followed falls below the acceptable standard of care.Id.
The "reasonable person" standard takes into consideration the circumstances of the defendant's actions. Cox v. Miller,361 So.2d 1044 (Ala. 1978); Standifer v. Pate, 291 Ala. 434,282 So.2d 261 (1973). It must be presumed that Craig presented herself to Borcicky with the expectation that he would exercise the ordinary skill and care of a competent podiatrist. Podiatry is a specialized skill or profession acquired only through training in schools devoted thereto. See Ala. Code 1975, §34-24-255. The licensing and practice of podiatry is regulated by Code §§ 34-24-230 through -276, and the unlicensed practice of podiatry is a misdemeanor, § 34-24-270. Therefore, even if we apply a "reasonable person" negligence standard to the practice of podiatry, it must be a "reasonable podiatrist" standard. *Page 1256 
While an orthopedic surgeon is presumably familiar with the care and treatment of the human skeletal structure, his training is different from that of a podiatrist. Testimony as to negligence is generally limited to witnesses who are competent practitioners of a defendant's own school, who alone can testify as to the teachings of that school and as to the defendant's conformity to the practices of that school.Whitehurst v. Boehm, 41 N.C. App. 670, 255 S.E.2d 761, 765
(1979); Annot., 85 A.L.R.2d 1022 (1962); Am.Jur.2d Physiciansand Surgeons, § 205, p. 340.
This Court addressed an analogous issue in Wozny v. Godsil,474 So.2d 1078 (Ala. 1985). Wozny analyzed the question whether an osteopath was competent to give expert testimony with respect to the standard of care required of a medical doctor. This Court recognized, as an exception to the general rule, that a witness not of the defendant's school may be competent to testify where he is knowledgeable of the methods and standards of practice exercised by practitioners of the defendant's school, particularly in regard to principles of diagnosis or the existence of a condition that should be recognized by any physician or that are common to the defendant's and the witness's schools.
Dr. Borcicky cites several cases from other jurisdictions to support his argument against admitting the testimony. For instance, in Botehlo v. Bycura, 282 S.C. 578, 320 S.E.2d 59
(App. 1984), a case similar to the present case, a podiatrist was sued for malpractice. The Court of Appeals of South Carolina held that a podiatrist's duty of care must be measured by the practices and principles of the particular healing arts in which he or she is trained and licensed. Id. The trial judge in that case had concluded that an orthopedic surgeon offered as an expert witness could not testify as to the standard of good podiatric practice because he did not have any training or instruction in podiatry, was unfamiliar with the journals, periodicals, and books written by podiatrists, and admitted that he had never attended any seminars on podiatry and was not familiar with the standards of professional care generally observed by podiatrists.
Whitehurst v. Boehm, 41 N.C. App. 670, 255 S.E.2d 761 (1979), also held that the standard of care required of a podiatrist could not be established by the testimony of an orthopedic surgeon not familiar with the practice of podiatry. The court stated that a podiatrist must exercise that degree of ordinary skill and care that is commonly exercised by other podiatrists in the same locality under similar circumstances. Id. A podiatrist is not bound to possess and exercise the degree of skill and learning required of an ordinary physician or surgeon. Id. The court held that, because the educational requirements for a podiatrist are less demanding than those of a physician or a surgeon, proof of negligence may be offered only by practitioners of the defendant's own school of medicine. Id.
In contrast to the above cases, the Court of Appeals of Georgia allowed testimony by an orthopedic surgeon regarding the standard of care owed by a licensed podiatrist inSanford v. Howard, 161 Ga. App. 495, 288 S.E.2d 739 (1982). The court based its decision on the fact that the orthopedic surgeon had stated that he was familiar with the procedure that the defendant had used to treat the plaintiff. The court held that while the membership in a different school of medicine may affect the weight given the testimony, it does not affect its admissibility. Id. See, also, Durkee v. Oliver, 714 P.2d 1330
(Colo.App. 1986) (failure to qualify podiatric surgeon was an abuse of discretion); Marshall v. Yale Podiatry Group,5 Conn. App. 5, 496 A.2d 529 (1985) (orthopedic surgeon qualified to testify as to podiatrist's standard of care because of familiarity with common standard of both professions);Alexander v. Mt. Carmel Medical Center, 56 Ohio St.2d 155,383 N.E.2d 564 (1978) (in malpractice action against orthopedic surgeons it was error to exclude podiatrist's testimony because the fields of medicine overlap); Creasey v. Hogan, 48 Or. App. 683, 617 P.2d 1377 (1980) (no error in admitting testimony of orthopedic surgeon in malpractice action against podiatrist, because both used similar surgical methods). *Page 1257 
While those cases are persuasive, they can be distinguished from the facts presented here. In this case, Dr. Zarzour freely admits that he has no knowledge of podiatry. Dr. Borcicky cites Dr. Zarzour's deposition testimony as showing a total lack of training in podiatry:
"Q. Have you ever been to podiatry school?
"A. No, sir.
 "Q. Have you ever attended any seminars or professional training programs in which you have studied podiatry or podiatric surgical techniques or procedures?
"A. No, sir.
 "Q. Are you personally familiar with the standards of care that govern the practice of podiatry or podiatric surgery in the Mobile podiatric medical community or the national podiatric community?
"A. No, sir.
 "Q. Are you personally familiar with the methods of diagnosis prescribed by the proper standard of podiatric medical care for conditions of the nature complained of by Mrs. Craig which she presented to Dr. Borcicky?
"A. No, sir.
 "Q. Are you personally familiar with the mechanical appliances, instruments or electrical appliances necessitated by the proper standard of podiatric medical care for conditions of the nature complained of by Mrs. Craig when she first presented to Dr. Borcicky?
"A. No, sir.
 "Q. Are you personally familiar with the treatises generally recognized by podiatrists or podiatric surgeons as being authoritative on the issues and methods of treatment prescribed by the proper standard of the podiatric medical care for conditions of the nature complained of by the plaintiff when she first presented to Dr. Borcicky?
"A. No, sir.
"Q. Are you familiar with any podiatric treatises?
"A. No, sir."
In view of the evidence, it is clear that the trial court did not err in disallowing Dr. Zarzour's testimony, even under the exception recognized in Wozny, supra, and the cases just discussed, because he testified that he was unfamiliar with the practices and standards of podiatry. In an appropriate case, an orthopedic surgeon might properly offer expert testimony on the standard of care owed by a podiatrist, but in this case we cannot conclude that the trial judge abused his discretion in disallowing that testimony.
Craig also contends that she was not properly informed of the surgical procedures performed on her, and that Borcicky performed procedures that she had instructed him not to perform. She states that she agreed to the surgery for the ingrown toenail, the callus, and the bump, but that she specifically instructed Dr. Borcicky not to perform any surgery on her toes and that he disregarded her instructions. While Craig admits that she signed an authorization and consent form, she contends that the handwritten information now on the form specifying the procedures to be performed was not present when she signed it. In her affidavit, she stated:
 "I consulted Dr. Borcicky for the first time in September 1985 for a painful ingrown toenail on my right big toe and a painful callus on the bottom of my right foot. Dr. Borcicky clipped out the edge of my ingrown toenail and his nurse ground down the callus on the bottom of my foot.
 "I again saw Dr. Borcicky in January of 1986 for the same problem. Again Dr. Borcicky cut out the corner of my ingrown toenail and his nurse ground down the callus. This was the same callus and ingrown toenail as before. At this time Dr. Borcicky told me that the ingrown toenail and callus would have to be surgically removed or they would continue to grow back.
 "On August 4, 1986 I went back to Dr. Borcicky because my ingrown toenail and callus had grown back and I had a small 'bump' on the outside edge of my right little toe. Dr. Borcicky took X-rays of *Page 1258 
both feet and told me that he could 'fix my feet up.' He said I needed the ingrown toenail removed surgically, the callus removed, the bump removed and that he could keep my toes from 'balling up,' by 'letting down' my toes. I was told that I would miss 'some' work. I told Dr. Borcicky that I would have to go home and discuss this with my husband and that I would let him know. I also had to see how much time I could take off work.
 "After discussing this with my husband we decided that this kind of surgery should be done in a hospital and just to have the callus and ingrown toenail and the bump removed.
 "I also talked to my friends Essie Williams, Betty Coleman and my mother Tillie Poole about this surgery. All of them told me to only have the callus and ingrown toenail and bump removed, and to not let him touch my toes.
 "On August 14, I went into Dr. Borcicky's office to have my ingrown toenail and callus removed and the small bump on my right little toe removed. I had already signed the consent form on August 4, 1986. At the time I signed the consent form there was no writing at the top of the form.
 "Upon my arrival at Dr. Borcicky's office I informed the nurse that I only wanted the ingrown toenail, callus and small bump removed.
 "Dr. Borcicky came into the room when I was in the chair to be operated on. He asked me what I wanted to do. I told him I only wanted him to do the ingrown toenail, the callus and the bump.
 "I was reclining back in the chair and could not see what was taking place. Dr. Borcicky deadened my foot at the toes and the heel. After a short while Dr. Borcicky told me to look what he had done. I looked down and he had cut the top of my foot across three of my toes and had 'let my toes down.'
 "At this point I fell back in the chair so upset because I did not want my toes 'let down.' Dr. Borcicky didn't saying anything at this point; he just stitched up my foot and left the room. He did not even remove the ingrown toenail or the callus. The nurse bandaged my foot and told me to go to the X-ray room, where she took 2 or 3 X-rays. She gave me 2 prescriptions. They sent me home then without even giving me a cane to help me walk."
Under the proper circumstances, a cause of action will lie against a health care practitioner for failure to obtain informed consent. Our legislature has adopted the majority view that a doctor's duty to get informed consent must be measured by an objective standard. Fain v. Smith, 479 So.2d 1150, 1152
(Ala. 1985). This standard is based on what a reasonable person in the patient's position would have done had the information been disclosed by the practitioner. Id. at 1155. A physician is not required to inform the patient of each and every risk in a particular procedure; however, the doctor should inform the patient of the "significant perils" involved in the procedure.Otwell v. Bryant, 497 So.2d 111, 118 (Ala. 1986). Therefore, the determination of whether informed consent was obtained is a question of fact for the jury. Id. While both Fain and Otwell
concerned medical doctors, they are relevant where a podiatrist has been charged with failure to obtain informed consent from his patient.
Dr. Borcicky maintains that Craig's claim, alleging lack of informed consent, was properly disposed of by summary judgment. Dr. Borcicky points to the handwritten items (1) through (5) on the top of the consent form that list the procedures to be performed. He calls specific attention to item (3), the procedure Craig claims she did not authorize. Dr. Borcicky notes that the form has a clause stating that "the nature or purpose of the operation(s), possible alternative methods of treatment, the risk involved, and the possibility of complications have been explained to me."
Finally, Dr. Borcicky contends that Craig's claim fails because she failed to produce any expert testimony showing the usual standard of disclosure by a podiatrist under similar circumstances. Therefore, *Page 1259 
he argues, no podiatric standard for disclosure was established and Craig failed to prove any deviation from such a standard. We do not agree.
Rule 56, A. R. Civ. P., clearly states that summary judgment is proper if the pleadings, depositions, and affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. Conversely, where there are factual issues to be determined, summary judgment is improper. McGhee v. Mid-StateHomes, Inc., 504 So.2d 279 (Ala. 1987). Clearly, in this case there is a dispute between the parties as to whether Craig had consented to the procedures that allegedly caused her injury.
A party opposing a motion for summary judgment may not rest upon a mere denial or on the allegations in his pleadings.Crowder v. Correctional Medical Systems, 497 So.2d 486 (Ala. 1986); Garrigan v. Hinton Beef Provision Co., 425 So.2d 1091
(Ala. 1983). However, in this case, Craig goes further than a general denial. Craig stated in her affidavit that she told Borcicky that she wanted only the ingrown toenail, the callus, and the bump treated. In light of the history of his suggesting the surgery on her toes and her statements that she never gave him permission to do that surgery, her affidavit, viewed in the light most favorable to her as the nonmoving party, raises a clear fact question as to whether she gave him permission to do that surgery, which was the alleged source of her injuries. Thus, this is not a case of "informed" consent, where the question is whether the patient would have consented if all known risks had been disclosed; rather, it is a question of whether she consented at all to the injury-producing procedure, which was significantly different from the three procedures to which she concededly did consent.
Nor is the summary judgment proper because of the inclusion on the form of the reference to the surgery on her toes. The form was signed on August 4, and Craig states that there was no writing on the top of the form at that time; this statement, if believed by the jury, would mean that the procedures to be performed were not listed at the time.
The form was not signed by an attesting witness, and Borcicky has not affirmatively stated that all the information now on the form was on it when Craig signed it. The handwriting on the form is difficult to read and couched in technical language, and he has not said that he explained it to her.
Even if the form did contain that information when she signed it on the 4th, Borcicky would not be entitled to a summary judgment on the record before us. His affidavit does not contradict her statement that she told him just before the operation to treat only the ingrown toenail, the callus, and the bump. Thus, even if she could be held to have consented under the terms of the written form on the 4th, a jury might find that she retracted her consent just before surgery on the 14th.
For the foregoing reasons, the judgment is reversed, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.