## A98A1907. BENNETT v. BUTLIN et al.
### (512 SE2d 13)

BEASLEY, Presiding Judge.

Nell Bennett sued podiatrist Winfield E. Butlin and his firm for malpractice in connection with foot surgery Butlin performed on Bennett. The trial court granted a directed verdict in Butlin's favor at the end of Bennett's case. The sole issue on appeal is whether Bennett's expert witness, Dr. Paul F. Richin, an orthopedic surgeon, was qualified to testify at trial as to whether Butlin met the appropriate standard of care.

In the fall of 1989, Bennett "stepped on a little pebble and flipped [her] foot." She later noticed what appeared to be a small bone protruding on the side of her foot which caused pain while standing. In May 1991, Bennett consulted with Dr. Butlin. His records show he diagnosed her as having "painful extended navicular & os tibial externum." Dr. Butlin suggested surgery to remove her "extended os tibiale externum and a portion of the navicular." She consented, and Butlin performed the surgery.

After Bennett was allowed to put weight on the foot, she experienced pain and numbness in her toes which worsened over time. She met with Butlin on many occasions through December 1991 about the increasing pain. Butlin conceded at trial that as a result of the surgery, Bennett lost function of the posterior tibial tendon in her foot, which causes a collapsing of the foot, and also lost some of the ability to turn her foot. He stated that as a result of the surgery she had a permanent painful flat foot and was unable to stand, walk or perform other activities for any duration of time.

Eventually Bennett sought the advice of other doctors, including Dr. Richin in April 1992. Dr. Richin testified that Dr. Butlin was negligent. Butlin objected on the ground that Richin was incompetent to testify against a podiatrist.

1. "The general rule is that a member of a school of practice other than that to which the defendant belongs is not competent to testify as an expert in a malpractice case."[1] In Georgia, podiatrists and orthopedic surgeons belong to different schools of medical practice.[2] The licensing requirements for professionals of the two schools are governed by separate sections of the Georgia Code.[3] Differences include that professionals from each school must attend different colleges. Podiatrists must graduate from accredited colleges of podiatric medicine, whereas orthopedists must graduate from approved medical or osteopathic colleges.[4]

There is a limited exception to the rule precluding members of one school of medicine from testifying against another. "Where there is proof by competent evidence that the methods of treatment are the same despite the difference in the nomenclature of the schools involved, the witness is competent to testify."[5] The two schools must overlap in their treatment of the condition in order for the expert from one professional school to be competent to testify against a professional from a different school.[6]

Dr. Richin testified that he reviewed Bennett's medical records which included her x-rays before and after surgery, Butlin's diagnosis, and Butlin's own description of the procedure he performed. Richin described the condition known as "accessory navicular" as an extra growth of bone on some people's feet which may cause pain. He stated that "os tibial externum" is another term for the same type of growth and that a person may have more than one such growth. He described a tendon known as the posterior tibial tendon which helps support the inside of the foot and maintain the foot's arch. If the tendon is loosened, the foot will pronate, i.e., become a flat foot. He noted that if one removes a piece of the accessory navicular, the tendon becomes looser because the tendon passes over that bone, and once

---

[1] *Sandford v. Howard*, 161 Ga. App. 495, 497 (4) (288 SE2d 739) (1982); *Milligan v. Manno*, 197 Ga. App. 171 (397 SE2d 713) (1990).

[2] *Sandford v. Howard*, supra, 161 Ga. App. at 496 (1).

[3] See OCGA §§ 43-34-27; 43-35-12. Orthopedic surgeons are subsumed under medical physicians. *Sandford v. Howard*, supra.

[4] See OCGA §§ 43-34-27; 43-35-12 (1).

[5] *Sandford v. Howard*, supra, 161 Ga. App. at 497 (5); see also *Nowak v. High*, 209 Ga. App. 536, 538 (433 SE2d 602) (1993) (same); *HCA Health Svcs. v. Hampshire*, 206 Ga. App. 108, 111 (3) (a) (424 SE2d 293) (1992) ("in order for an affiant to be 'an expert competent to testify,' the expert either must be a member of the same professional school as the defendant or, if from a different professional school, must state the particulars how the methods of treatment are the same for the different schools in order to establish that the affiant possesses the expertise to be able to give an opinion regarding the applicable standard of care to which the defendant is held. [Cits.]"); *Chandler v. Koenig*, 203 Ga. App. 684, 685 (417 SE2d 715) (1992); *Milligan v. Manno*, supra; *Bethea v. Smith*, 176 Ga. App. 467, 468 (2) (336 SE2d 295) (1985).

[6] *Hewett v. Kalish*, 264 Ga. 183, 184-185 (442 SE2d 233) (1994).

the bone is removed the tendon is not as taut. He has seen accessory naviculars on many of his own patients.

When Bennett asked Richin about considerations foot surgeons face with regard to an accessory navicular, Butlin objected and asked to voir dire the witness to determine competency, which he did.

Dr. Richin's opinions with regard to Bennett's foot are based on his training as a medical doctor with a sub-specialty in orthopedics. He has been practicing as a board-certified orthopedic surgeon for over 20 years. No question has been raised as to his competency as an expert orthopedist. He testified that general principles of how to treat a tendon, found in medical literature, his training as an orthopedist, and his own experience performing the same procedure, informed his opinion, not "podiatric seminars, podiatric medical education, podiatric residency, or podiatric literature." He did not have such podiatric background and was not a member of podiatric associations.

Dr. Richin testified that by reviewing Bennett's medical records, including Butlin's description of the procedure, and based on his training and experience as an orthopedist, he was able to identify the procedure Butlin performed as the "Kidner Procedure," or a "modified Kidner's." Dr. Butlin conceded: "The procedure that I did specifically and the Kidner procedure both involve remodeling the navicular." Butlin's records regarding Bennett refer to the procedure at least once as "Kidner surgery." Butlin also testified that he had studied Kidner-related procedures in podiatric literature. Richin testified that as an orthopedist he performs "the exact same procedure that was described in [Butlin's] operative report." The procedure involves removing part of the accessory navicular and reconstruction or repair of the posterior tibial tendon. Richin testified there is only one standard of care for treating Bennett's condition for both podiatrists and orthopedists.

Dr. Richin further explained that in his opinion Butlin failed to address Bennett's tendon as completely as it should have been; that Butlin took out too much bone and thereby loosened the tendon but did not take sufficient steps to ensure the tendon would be tight. He stated that the doctor must tighten the tendon in accordance with how much bone is removed. Without proper tightening the result is a painful pronated flat foot because of a nonfunctioning posterior tibial tendon.

In *Nowak v. High*,[7] this Court held that a nurse was competent to testify against a doctor accused of improperly administering an injection of phenergan. This Court found evidence of competence suf-

---

[7] Supra, 209 Ga. App. 536.

ficient where (1) the nurse stated in an affidavit that she was familiar with the standard of care regarding the giving of injections in both the nursing profession and the medical profession generally; and (2) even though she did not explicitly state the method that doctors and nurses use is the same, she showed that her education, training, and experience gave her "peculiar knowledge concerning this particular area of overlapping expertise."[8]

In *Sandford v. Howard*,[9] this Court addressed for the first time whether orthopedic surgeons were competent to testify against podiatrists. In *Sandford* the podiatrist had performed a "Young-Lowman Suspension" procedure on the plaintiff to alleviate her flat feet. The plaintiff's orthopedic experts testified they were aware of the procedure and that "Campbell's Orthopedics," "the Bible of orthopedics," listed the operation as an acceptable procedure. The testimony also showed that both professions recognized conservative treatment in addition to the named procedure. Based on these two areas of commonality, *Sandford* held the orthopedists were competent to testify against the podiatrist.

Richin's testimony together with Butlin's testimony and Butlin's operative notes are sufficient to establish an overlap between the two professions with regard to removal of the accessory navicular and the related tendon work. There is some evidence of an overlap in the use of the specific procedure to treat the diagnosed condition. Richin recognized this exact procedure, noted that reference is made to the procedure in "Campbell's Operative Orthopedics," the definitive work concerning operative procedures in orthopedics, and identified it by the same name used by Butlin. He had treated the same condition and was accepted as an expert orthopedist which expertise included performing this procedure. Thus, although Richin was not familiar with podiatric education and literature, he adequately testified about the common use of the operative procedure, as performed by Butlin and as known in orthopedics. Based on *Sandford v. Howard, Nowak v. High,* and *Hicks v. Mauldin,* the court erred in concluding that Richin was incompetent to testify against Butlin as to the medical standard of care for the procedure employed.[10]

---

[8] Id. at 538. See also *Hicks v. Mauldin,* 190 Ga. App. 660, 661-662 (4) (379 SE2d 806) (1989) (osteopathic pediatrician competent where he testified there was absolutely no difference in the way an allopathic physician and an osteopathic pediatrician would treat the condition).

[9] Supra, 161 Ga. App. 495.

[10] Compare *HCA Health Svcs. v. Hampshire,* supra, 206 Ga. App. 111 (3) (a) (affidavit of allopathic physician insufficient against osteopath because it contained no evidence regarding the methods of treatment so as "to establish 'a professional overlap of expertise in at least one matter alleged by (appellees) to constitute malpractice' "); *Chandler v. Koenig,* supra (affidavit of pharmacologist in malpractice suit against physician insufficient since areas of overlapping expertise were not clearly set forth); *Milligan v. Manno,* supra (osteo-

When reviewing the grant of a motion for directed verdict, we construe the evidence with all reasonable deductions therefrom in favor of the party opposing the motion.[11] Because Richin testified that Butlin's·actions fell below the standard of care for performing the procedure, a directed verdict was unwarranted.

*Bethea v. Smith*[12] is not controlling. In *Bethea* there was no testimony showing a common procedure used by both professions, an overlap in methods of treatment, or the podiatrist's expert knowledge of the orthopedist's method of diagnosis and treatment of the condition.

The fact that Bennett defeated Butlin's earlier motion to dismiss in which Butlin argued that Richin's OCGA § 9-11-9.1 affidavit was insufficient because Richin was incompetent is irrelevant. That ruling is only a determination that the affidavit satisfies pleading requirements.[13] It does not foreclose a later finding, which addresses a different question, that the same expert is incompetent to testify under an evidentiary standard.[14]

2. Bennett contends the court erred in requiring redaction of certain documents which, unredacted, show that medical personnel other than Butlin referred to the procedure as a "Kidner's procedure." Butlin had objected to three documents: the pathology report, the "anesthesiology history, physical and diagnosis and procedure," and an order form for orthotics.

First, Butlin's own testimony showed he agreed that Kidner's procedure and the procedure he performed both involved remodeling the navicular. And other unredacted evidence not objected to, signed by Butlin, refers to the procedure as Kidner surgery. Thus the evidence may have been cumulative. Second, the redacted documents are not in the record. Third, " '(i)f a hospital record contains diagnostic opinions and conclusions, it cannot, upon proper objection, be admitted into evidence unless and until the proper foundation is laid, i.e., the person who entered such diagnostic opinions and conclusions upon the record must qualify as an expert and relate the facts upon which the entry was based.' [Cits.]"[15] Without the objected-to documents in the record, we cannot conclude the court erred in requiring

---

pathic physician's affidavit insufficient in action against allopathic physician since it contained no evidence that the methods of treatment of plaintiff's condition were the same); *Bethea v. Smith*, supra (affidavit of podiatrist in action against orthopedic surgeon that he was familiar with the medical profession generally was insufficient where there was no showing that method of treatment was the same for the two professions).

[11] *Moore v. American Suzuki Motor Corp.*, 203 Ga. App. 189 (1) (416 SE2d 807) (1992).
[12] Supra, 176 Ga. App. 467.
[13] *Hewett v. Kalish*, supra, 264 Ga. at 184-186 (1).
[14] Id.
[15] *Stoneridge Properties v. Kuper*, 178 Ga. App. 409, 412 (1) (343 SE2d 424) (1986).

redaction of the three documents.

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 3, 1999 —
RECONSIDERATION DENIED MARCH 1, 1999 —

*G. Clyde Dekle III*, for appellant.

*Nall, Miller, Owens, Hocutt & Howard, Robert L. Goldstucker, Paul J. Pontrelli*, for appellees.