**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**August 12, 2024**

# In the Court of Appeals of Georgia

A24A0816. REDDY v. BELTON et al.

GOBEIL, Judge.

Wanda Benning Belton, individually and as Administrator of the Estate of Henry Benning ("Decedent"), along with Veronica Benning, Rhonda Brown, and Awona Love (collectively, the "Plaintiffs"), filed suit against Ramesh R. Reddy, M. D., arising out of the death of their father, Decedent. In the instant appeal, Dr. Reddy challenges the trial court's grant of partial summary judgment to the Plaintiffs on the issues of duty, breach, and causation in this underlying medical malpractice action. For the reasons that follow, we now reverse the judgment and remand to the trial court for further proceedings not inconsistent with this opinion.

A trial court properly grants a motion for summary judgment when there are no genuine issues of material fact and the movant is

entitled to judgment as a matter of law. On appeal of a grant of summary judgment, we conduct a de novo review, and we view the evidence in the light most favorable to the nonmoving party.

*Holcomb Investments Ltd. v Keith Hardware, Inc.*, 354 Ga. App. 270, 271 (840 SE2d 646) (2020) (citation and punctuation omitted). So viewed, the record shows that on January 21, 2019, Decedent, who was 78 years old at the time, was admitted to a rehabilitation facility run by Pruitt Health Christian City LLC d/b/a Christian City Rehabilitation ("Pruitt Health") in Union City following abdominal surgery. Dr. Reddy was Decedent's primary attending physician at the rehabilitation facility. A few days later, on January 25, 2019, Decedent fell at the facility and complained of head pain. Dr. Reddy was notified of the fall shortly after 7:00 a.m. on January 25 and ordered x-rays. Decedent's condition deteriorated, and on January 27 he became unresponsive and was transferred to Grady Hospital. At the hospital, a CT scan of his head showed that Decedent had subdural and intracranial hemorrhages.[1] Based on his poor prognosis, Decedent was recommended for palliative care. He was subsequently transferred to hospice care, where he died on February 2, 2019.

---

[1] A subdural hemorrhage or hematoma is a bleed on the surface of the brain, and an intracranial (or intraparenchymal) hemorrage is a bleed into the brain.

In December 2020, the Plaintiffs filed a medical malpractice suit,[2] as amended, alleging in pertinent part that Dr. Reddy failed to properly examine Decedent immediately after the fall, and had Decedent been timely transferred to a hospital, he would have received proper neurosurgical intervention and treatment and survived. In support of their position, the Plaintiffs identified Robert Singer, M. D., an expert in the fields of neurosurgery and neurovascular surgery, and Steven Kanner, M. D., a geriatrician, to argue that timely CT imaging would have identified Decedent's brain bleed, allowing for surgical intervention.

During discovery, Dr. Reddy identified Dave Ringer, M. D., a board-certified family medicine physician who serves as the medical director for several long-term care facilities, as a potential defense expert. In his deposition, Dr. Ringer asserted that physicians depend on nursing home staff to keep them informed of a patient's condition; a CT scan was not clinically indicated based on what Dr. Reddy knew about Decedent's condition following his fall; and the applicable standard of care only required the attending physician to refer the patient to a hospital when the patient's

---

[2] The Plaintiffs also named Pruitt Health as a defendant in the suit, raising claims for, among other things, negligence and various regulatory and statutory violations. The parties later filed a joint motion to dismiss the Plaintiffs' claims against Pruitt Health with prejudice, which the trial court granted.

overall condition changes. Dr. Ringer opined that, overall, Dr. Reddy's care of Decedent complied with the standard of care, and Decedent's outcome would not have been different because a neurosurgeon likely would not have intervened earlier based on Decedent's age and existing medical issues. However, by his own admission, Dr. Ringer has no background or training in neurosurgery, and he stated that he would defer entirely to a neurosurgeon's judgment in such cases.

In response, the Plaintiffs moved to exclude Dr. Ringer's causation testimony, arguing that he was unqualified to render an opinion on Decedent's death because he lacked the necessary experience and training in neurosurgery and treatment of brain injuries. The Plaintiffs also sought partial summary judgment on the issue of causation, asserting that because "Dr. Ringer is [Dr. Reddy's] only expert, [Dr. Ringer's] causation opinions should be excluded."

Dr. Reddy did not file a timely response to the Plaintiffs' motion to exclude Dr. Ringer's expert testimony and for partial summary judgment. After the Plaintiffs withdrew their request for a hearing on their motion, Dr. Reddy filed his response on October 13, 2023, asserting that Dr. Ringer was solely offered as an expert on the standard of care and Reddy "did not identify Dr. Ringer — and does not intend to

offer him — to provide causation testimony in this case." Dr. Reddy opposed the Plaintiffs' request for partial summary judgment on the issue of causation, arguing that the issue of whether he breached the duty of care remained unresolved.

In an order dated November 30, 2023, the trial court granted the Plaintiffs' motion to exclude Dr. Ringer's causation opinion based on Dr. Reddy's concession that Dr. Ringer was not identified nor intended to be offered as a causation expert. The court went on to grant summary judgment in favor of the Plaintiffs as to the elements of duty, breach, and causation. Specifically, the court highlighted there was no dispute that Dr. Reddy and Decedent had a doctor-patient relationship and the Plaintiffs offered expert testimony from Drs. Singer and Kanner to prove that Dr. Reddy violated the standard of care, which resulted in Decedent's death. The court also found that Dr. Reddy had not met his burden to show a jury issue existed as to causation because he "failed to point to any expert testimony that rebuts [the] Plaintiffs' expert testimony on the issues of breach and causation." As a result, the only issue remaining for the jury was damages. This appeal followed.

In a single enumeration of error, Dr. Reddy argues that the trial court improperly granted partial summary judgment in favor of the Plaintiffs as to his

liability.[3] Specifically, he asserts that the trial court erred in granting summary judgment (1) as to duty and breach — even though the Plaintiffs never proved their entitlement to relief on those issues; (2) on the issues of duty and breach without giving him fair notice that it was adjudicating those issues; and (3) because Georgia law does not authorize the grant of summary judgment in favor of a plaintiff based on opinion testimony alone.

We agree with Dr. Reddy that the trial court had no authority to issue a ruling as to the issues of duty and breach. The Plaintiffs did not move for summary judgment on these elements. Rather, they asserted that they were entitled to summary judgment as to causation because Dr. Reddy failed to put forth any evidence on this issue — aside from Dr. Ringer's causation opinion, which had been disallowed. As a result, the issues of duty and breach were never raised below. In its order, the trial court summarily concluded that the Plaintiffs were entitled to summary judgment on the elements of duty, breach, and causation because they had proved, through the testimony of their experts, Drs. Singer and Kanner, that Dr. Reddy violated the standard of care owed to Decedent, which led to Decedent's death. This was error.

_____

[3] In his appeal, Dr. Reddy does not contest the trial court's grant of the Plaintiffs' motion to exclude Dr. Ringer's causation testimony.

Under our law, to prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.

*Hodge v. SADA Enterprises*, 217 Ga. App. 688, 689 (1) (458 SE2d 876) (1995) (citations and punctuation omitted; emphasis in original).

A plaintiff, on the other hand, must demonstrate that there is no genuine issue of material fact as to every element of his or her claims and that the undisputed facts, viewed in the light most favorable to the defendant, warrant judgment in the plaintiff's favor as a matter of law. These burdens are completely different, as it cannot be said that, where a defendant is unable to show that there is no evidence sufficient to create a jury issue on at least one essential element of a plaintiff's case, a plaintiff has automatically carried his or her burden of proving every element of his or her case such that he or she is entitled to judgment as a matter of law. In this sense, a defendant's inability to show at the summary judgment stage that a plaintiff cannot prevail as a matter of law

7

has nothing to do with a plaintiff's entirely separate burden of showing that he or she is entitled to prevail as a matter of law.

*BAC Home Loans Servicing, L. P. v. Wedereit*, 297 Ga. 313, 316 (773 SE2d 711) (2015) (citations, punctuation and emphasis omitted).

In its order, the trial court found that "[Dr. Reddy] has not met his burden [to show that a jury issue exists] as he has failed to point to any expert testimony that rebuts [the] Plaintiffs' expert testimony on the issues of breach and causation." In so doing, the trial court impermissibly shifted the burden to Dr. Reddy of affirmatively disproving the Plaintiffs' case, rather than leave the burden where it belongs, with the Plaintiffs, to prove their case. See *Smith v. Atlantic Mutual Co.*, 283 Ga. App. 349, 351 (1) (641 SE2d 586) (2007) (in order for a plaintiff to be awarded summary judgment, "[i]t is incumbent upon [that] plaintiff to prove its case and, until it does, a defendant is under no obligation to disprove it"). Importantly,

> [a]lthough our law concerning motions for summary judgment allows a trial court to grant, sua sponte, a [motion for] summary judgment, a trial court's authority to do so is not unlimited. The grant of summary judgment must be proper in all other respects. This means that in addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered

is given full and fair notice and opportunity to respond prior to entry of summary judgment.

*Hodge*, 217 Ga. App. at 690 (1) (citations and punctuation omitted).

Here, Dr. Reddy was never notified that the trial court intended to rule upon the issues of duty and breach, and those issues were not raised below. As a result, he did not have fair notice or opportunity to respond to the contentions on which the trial court granted summary judgment. Therefore, the trial court's order must be reversed on this basis as well.[4] See *Covington v. Countryside Investment Co.*, 263 Ga. 125, 127 (3) (428 SE2d 562) (1993) (where defendant only moved for summary judgment on plaintiff's specific performance and damages claims, trial court erred in granting summary judgment to defendant sua sponte on its counterclaim for breach of contract).

Finally, absent a determination of whether Dr. Reddy breached any duty to Decedent, the trial court was premature in its grant of summary judgment in favor of the Plaintiffs on the issue of causation. The basis for medical malpractice actions is OCGA § 51-1-27, which provides in part, that the person professing to practice

---

[4] In so holding, we expressly state no opinion as to whether the evidence was sufficient to raise a jury question on the issues of duty and breach.

medicine "must bring to the exercise of his profession a reasonable degree of care and skill." Injury resulting from want of such care is a tort. *Sullivan v. Henry*, 160 Ga.App. 791, 800 (1) (287 SE2d 652) (1982). "Our law presumes that a physician and surgeon performs his healing art in an ordinarily [skillful] manner and the burden is on the one who denies it to show the lack of due care, skill, and diligence." *McClure v. Clayton County Hosp. Auth.*, 176 Ga. App. 414, 416 (1) (336 SE2d 268) (1985). See also *Pneumo Abex, LLC v. Long*, 357 Ga. App. 17, 21 (1) (a) (849 SE2d 746) (2020) (in order to recover in a medical-malpractice case, a plaintiff is required to show a violation of the applicable medical standard of care and "that the purported violation or deviation from the proper standard of care is the proximate cause of the injury sustained") (citation and punctuation omitted). Thus, without establishing the deviation from the standard of care, the issue of causation remains an open question.

Based on the foregoing, we reverse the trial court's grant of summary judgment in favor of the Plaintiffs on the issues of duty, breach, and causation, and remand to the trial court for further proceedings not inconsistent with this opinion.

*Judgment reversed and case remanded. Barnes, P. J., and Pipkin, J., concur.*